THIGPEN, Judge.
This is a workmen’s compensation case.
On December 3, 1990, Florine Whitehead (employee) filed suit for workmen’s compensation benefits allegedly due her as a result of an on-the-job injury to her knee while in the employ of International Paper Company (IPCO).
At trial, the parties stipulated to the following: The employee suffered an on-the-job injury to her right knee on January 18, 1989. An employment relationship existed between the parties at the time of the accident and proper notice of the accident was given by the employee to IPCO. The employee’s average weekly wage was $447.41. Prior to trial, IPCO had paid $14,-380.42 to the employee as compensation. Of this amount, $4,400 was paid as compensation according to the schedule provisions of Ala.Code 1975, § 25-5-57(a)(3). IPCO was current in its payment of medical expenses and the employee reached maximum medical improvement in January 1990. The employee retired from IPCO on April 1, 1991.
After an ore tenus proceeding, the trial court entered an order which stated, inter alia, the following:
“6. Under § 25-5-57(a)(3) of the Alabama Code, where an employee suffers an injury to a member included in the schedule, the compensation to be paid is limited to the number of weeks shown in the schedule.
“7. The Court is not authorized to consider loss of ability to earn in making an award for loss of use of a scheduled member.
“8. An injury to the knee is an injury to a scheduled member, i.e. the leg.
“9. There is no evidence in this case that would support removal of this case from the schedule provisions of the Alabama Workmen’s Compensation Act. There was no evidence presented to the Court, medical or otherwise, that [the employee’s] injury extended beyond the right leg, nor was there any evidence that the disability caused by the leg injury was greater than would normally occur with such an injury.
“10. Under § 25-5-57(a)(3)-(a)(16), the loss of a leg is compensated at the prescribed rate for two hundred weeks. Under § 25-5-57(a)(3)(d), where there is less than total loss of a schedule member, or where there is less than total loss of use, the loss is compensated for the proportionate extent of the prescribed period.
“11. Based on Dr. Nelms’ findings that ten percent of [the employee’s] right leg problem[s] were attributable to the workplace injury, [IPCO] has discharged its liability by paying $4,400.00 as scheduled benefits for a permanent partial disability. This amount constitutes ten percent of two hundred weeks (or twenty weeks), multiplied by the applicable compensation rate of $220.00 per week.

“Judgment

“Based on the foregoing, the Court hereby finds that judgment is due to be entered in favor of [IPCO] as to [the employee’s] claims for additional worker’s compensation benefits. The Court further finds that, because [the employee] has suffered a compensable injury to the right knee, [IPCO] shall remain liable for all medical expenses for which it is responsible under § 25-5-77 of the Alabama Code which are directly related to the injury suffered by [the employee] to the right knee.”
(Citations omitted.)
The employee appeals. The issue on appeal is whether the trial court erred in determining that there was no evidence to support removal of the employee’s claim from the schedule provisions of the Alabama Workmen’s Compensation Act.
We first note that our standard of review in a workmen’s compensation case is a two-step process. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991). Initially, we must look to see if there is any legal evidence to support the trial court’s findings. If such evidence is found, we *402 must then determine whether any reasonable view of that evidence supports the judgment of the trial court. Eastwood Foods.
As referenced earlier, Ala.Code 1975, § 25-5-57(a)(3)a bases workmen’s compensation benefits for permanent partial disability on an enumerated schedule, which separately provides for the loss of specific body parts or members. In all other cases, § 25-5-57(a)(3)g provides for such benefits based on the employee’s loss of earning ability.
Our supreme court has concluded, however, that an injury to a scheduled member still may be compensated according to the employee’s loss of earning ability. Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (Ala.1968). The standard was set forth as follows:
“[Although the injury itself is to only one part or member of the body, if the effect of such injury extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, or the injury causes an abnormal and unusual incapacity with respect to the member, then the employee is not limited in his recovery under the Workmen’s Compensation Law to the amount allowed under the schedule for injury to the one member.”
Bell, 282 Ala. at 646, 213 So.2d at 811.
The employee argues that the effects of her injury extended significantly beyond her right leg and have resulted in her sustaining a permanent, total disability. Specifically, the employee contends that the pain resulting from her injury is of such extent as to cause distraction or total abandonment of daily activities or work. Also, the employee states that she is restricted physically to light-duty activities, she has suffered a complete loss of labor market access, and she ultimately will need a total knee replacement.
The deposition testimony of Dr. Joseph Nelms, an orthopedic surgeon, was introduced at trial. Dr. Nelms testified that he first examined the employee on July 18, 1989, six months after the employee’s injury at IPCO. Upon this examination, Dr. Nelms noted that the employee had generalized right knee pain with a good range of motion, although the employee told him that her knee “gives way” occasionally.
Dr. Nelms stated that diagnostic testing revealed that the employee had a problem with the medial meniscus (or cartilage) of her right knee, which could result from a degenerative process or from an acute injury. Dr. Nelms testified that, following an arthroscopic examination involving the removal of some of the cartilage, he determined that the employee’s knee condition was degenerative, and not acute. According to him, the employee “essentially had a worn out knee.” He testified that the employee had no cartilage in the area around her thigh and shin bone, and attributed this to her age and overweight condition. In fact, Dr. Nelms stated that he thought the employee “had a degenerative knee prior to her injury and ... her injury was more or less just the straw that broke the camel’s back. I think she would have had difficulty with that knee in a year or two years.”
Dr. Nelms further testified that he prescribed anti-inflammatory drugs for the employee in order to postpone surgery. He stated that she ultimately would have to undergo a total knee replacement and, in his opinion, this procedure would have resulted despite the employee’s fall at IPCO. According to Dr. Nelms, the employee reached maximum medical improvement in January 1990, and, as to the impairment rating of the employee’s knee, he assigned only ten percent of such impairment to the injury at IPCO. Of the various physical limitations placed on the employee by Dr. Nelms, he also stated that only ten percent of these limitations was attributable to her on-the-job accident.
Dr. Andin McLeod, a physician of orthopedic surgery, also testified by deposition. He stated that he first examined the employee in January 1985 due to complaints of back and knee pain. At that time, Dr. McLeod noted some degenerative changes in her back and her knee, and he prescribed non-inflammatory medication. He testified that he did not see the employee again until *403 1988, when she returned complaining of pain in both of her knees. At that point, he gave her an injection with cortisone and he recommended that she have arthroscopic surgery, if her trouble persisted.
Dr. McLeod examined the employee again following her arthroscopy with Dr. Nelms. Dr. McLeod noted that the employee had osteoarthritis of her back and her right knee. He testified that he had not examined the employee immediately following her injury at IPCO, and could not, therefore, assess its impact on her knee condition, but he was of the opinion that her osteoarthritis was aggravated by the accident, and that the injury “threw her over that edge to where she became somewhat nonfunctional.” In fact, Dr. McLeod testified that the employee was a prime candidate for osteoarthritis since she was somewhat active and she was also overweight. Finally, Dr. McLeod stated that the employee’s knee condition was consistent with degenerative changes rather than an acute injury, and that if knee replacement was necessary, it would not be the result of her injury at IPCO.
In her testimony, the employee admitted to having a problem with her right knee prior to her accident at IPCO. She also admitted to having back problems for approximately fourteen years prior to trial.
Based on the foregoing, we find there to be legal evidence to support the findings of the trial court, and that a reasonable view of such evidence supports the trial court’s judgment. Eastwood Foods. Accordingly, this case is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J., concur.