837 So.2d 831 (2002)
Ex parte DRUMMOND COMPANY, Inc.
(In re Drummond Company, Inc. v. Kenneth C. Pate).
1001929.
Supreme Court of Alabama.
May 31, 2002.
William Anthony Davis III and Blake D. Andrews of Starnes & Atchison, L.L.P., Birmingham, for petitioner.
James C. King and Robert O. Bryan of King, Harrison & Bryan, Jasper, for respondent.
Charles F. Carr and Joseph H. Driver of Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C., Birmingham, for amicus curiae Alabama Self-Insurers Association.
SEE, Justice.
This is a workers' compensation case. Drummond Company, Inc. ("Drummond"), petitioned for the writ of certiorari to review the Court of Civil Appeals' judgment affirming the trial court's award of workers' compensation benefits based on its finding that Kenneth C. Pate was 50% *832 permanently and partially disabled as a result of an on-the-job accident. We granted Drummond's petition; we reverse and remand.
Pate worked for Drummond as a belt patrolman monitoring coal as it left the mine on coal-carrying belts. Pate was also responsible for fixing any belts that stopped or malfunctioned. On March 7, 1996, Pate injured his left knee while he was climbing a hill to restart one of the belts. For approximately the next 10 days, Pate continued to work. Pate was then referred to Dr. Erich Wouters, an orthopedic surgeon.[1] Dr. Wouters took X rays of Pate's knee. The X rays revealed arthritis in Pate's knee, beneath the patella. Dr. Wouters performed arthroscopic surgery on the knee; the surgery revealed a partial tear of the meniscus.
On July 11, 1996, Dr. Wouters allowed Pate to return to work without any restrictions or limitations. Over the next several months, Pate returned to Dr. Wouters, complaining of intermittent swelling in his left knee.[2] In December 1996, Dr. Wouters again examined Pate, and he concluded that any swelling in Pate's left knee was the result of arthritis. Dr. Wouters changed Pate's anti-inflammatory medication and suggested he wear a neoprene sleeve over the knee. On August 14, 1997, Dr. Wouters again examined Pate, who was complaining of stiffness and weakness in his left knee. Dr. Wouters continued to attribute the stiffness and weakness to arthritis. Based on his examinations of Pate, Dr. Wouters assigned Pate an impairment rating of 1% to the whole body.
On August 11, 1997, Pate filed a workers' compensation action against Drummond; he sought benefits based on the injury to his left knee that had occurred in March 1996.[3] On June 19, 2000, the trial court found that Pate was 50% permanently and partially disabled as a result of his injury. On July 17, 2000, Drummond moved for a new trial. The trial court held a hearing on that motion, but it never ruled on the motion. The motion was, therefore, denied by operation of law on October 15, 2000. See Rule 59.1, Ala. R. Civ. P. The Court of Civil Appeals affirmed the trial court's judgment. Drummond Co. v. Pate, 837 So.2d 829 (Ala.Civ. App.2001).
Section 25-5-81(e), Ala.Code 1975, sets forth the applicable standard of review in workers' compensation cases:
"(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
"(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence."
See also Ex parte Golden Poultry Co., 772 So.2d 1175, 1176 (Ala.2000). The trial court's findings of fact "`on disputed evidence in a workers' compensation case are *833 conclusive.'" Ex parte Golden Poultry, 772 So.2d at 1176 (quoting Ex parte Ellenburg, 627 So.2d 398, 399 (Ala.1993)).
Although Drummond states that it presents two issues for this Court's review, it essentially presents one issue: whether the Court of Civil Appeals erred in affirming the trial court's judgment holding that Pate was entitled to benefits outside the compensation schedule found in § 25-5-57, Ala.Code 1975.
Section 25-5-57(a)(3), Ala.Code 1975, provides, in part:
"a. Amount and Duration of Compensation. For permanent partial disability, the compensation shall be based upon the extent of the disability. In cases included in the following schedule, the compensation shall be 66 2/3 percent of the average weekly earnings, during the number of weeks set out in the following schedule:
"....
"16. For the loss of a leg, 200 weeks."
Section 25-5-57(a)(3)d., provides:
"d. Loss of Use of Member. The permanent and total loss of the use of a member shall be considered as equivalent to the loss of that member, but in such cases the compensation specified in the schedule for such injury shall be in lieu of all other compensation, except as otherwise provided herein. For permanent disability due to injury to a member resulting in less than total loss of use of the member not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member which the extent of the injury to the member bears to its total loss."
In Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968), this Court established an exception that removes certain injuries from the workers' compensation schedule. This Court held in Bell:
"[A]lthough the injury itself is to only one part or member of the body, if the effect of such injury extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, or the injury causes an abnormal and unusual incapacity with respect to the member, then the employee is not limited in his recovery under the [Workers'] Compensation Law to the amount allowed under the schedule for injury to the one member."
282 Ala. at 646, 213 So.2d at 811. See also E.C. Corp. v. Kent, 618 So.2d 1357, 1358 (Ala.Civ.App.1992); A.M.R. Servs. v. Butler, 697 So.2d 472, 474 (Ala.Civ.App.1997); Wolfe v. Dunlop Tire Corp., 660 So.2d 1345, 1348 (Ala.Civ.App.1995).
In light of Bell, this Court asked the parties in this case to respond to the following questions:
"1. Are this Court and the Court of Civil Appeals consistently and correctly applying the Bell test?
"2. Should the test in Bell determine whether an injury is scheduled or unscheduled?
"3. Is Pate's injury scheduled or unscheduled?"
In Bell, this Court cited as authority for its analysis 2 Arthur Larson, Workmen's Compensation Law § 58.20, pp. 44-45:
"`The great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive. A common example of this kind of decision is *834 that in which an amputation of a leg causes pain shooting into the rest of the body, general debility, stiffening of the hip socket, or other extended effects resulting in greater interference with ability to work than would be expected from a simple and uncomplicated loss of the leg.'"
Bell, 282 Ala. at 645, 213 So.2d at 810-11. Although it appears that the language used by this Court in Bell in stating the test was actually from a note in the American Law Reports,[4] it was the intention of this Court in adopting in Bell the exception to the workers' compensation schedule to address those instances where the injury to a scheduled member caused such impairment to the body as a whole that the benefits reflected on the schedule were not appropriate. Specifically, the Bell test permitted an injury to a scheduled member to be compensated outside the schedule if the effect of the injury extends to other parts of the body and produces a greater or more prolonged incapacity than that which naturally results from the injury to the specific member. However, the Court of Civil Appeals has substantially expanded the Bell test to include, as effects that will take the injury outside the schedule: (1) pain, swelling, and discoloration;[5] (2) work restrictions;[6] (3) impairment ratings to the body as a whole;[7] and (4) vocational disabilities.[8] It also appears that the Court of Civil Appeals has considered the worker's ability to find future employment as a factor in deciding whether an injury to a scheduled member should be compensated outside the schedule. See Russell Corp. v. Wurtz, 625 So.2d 810 (Ala. Civ.App.1993); Whitehead Forest Prods., Inc. v. Huggins, 579 So.2d 657 (Ala.Civ. App.1991); and Smith v. Capps, 414 So.2d 102 (Ala.Civ.App.1982).
We renew our commitment to the policy that underlay the Bell test and that is recognized in the current edition of 4 Lex K. Larson, Larson's Workers' Compensation Law § 87.02 (2001):
"The great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive."
(Footnote omitted.) This language remains unchanged from the edition of the Larson treatise on which this Court relied in Bell. Because of the confusion that has developed surrounding the Bell test, we today adopt the language recited above *835 from Larson, Workers' Compensation Law § 87.02, as the test for determining whether an injury to a scheduled member should be treated as unscheduled;[9] therefore, we overrule Bell insofar as it established a different test, and we further overrule those cases listed in notes 5 through 8 insofar as they expanded the Bell test.[10]
This Court's 1969 decision in Leach Manufacturing Co. v. Puckett, 284 Ala. 209, 224 So.2d 242 (Ala.1969), is consistent with the policy expressed today and expressed in Larson's treatise:
"Where scheduled benefits are provided for compensation for loss of a member[,] they are not dependent on actual wage loss....
"....
"... [W]here there is an injury resulting in the loss of a member, or the loss of the use of a member, so as to invoke payment of compensation as provided [by the Workers' Compensation Act], and where this is not accompanied by other physical disability (of the body), the payment of the specified sum is intended to fully compensate the injured employee for the injury sustained."
284 Ala. at 214, 224 So.2d at 246-47.
We now address whether the trial court erred in compensating Pate's injury outside the schedule set out in § 25-5-57. We hold that the trial court erred in awarding workers' compensation benefits *836 based on its finding that Pate was 50% permanently and partially disabled as a result of an on-the-job injury. It did not have before it substantial evidence indicating that Pate's injury should have been compensated outside the schedule. See § 25-5-81(e), Ala.Code 1975. Pate testified that his knee occasionally swelled, but that the swelling did not occur on a daily basis. Pate testified that he took ibuprofen or naprosyn when his knee swelled, but that he did not take anything stronger for the pain. Moreover, Dr. Wouters assigned Pate an impairment rating of 1% to the whole body, based on the fact that Pate had no loss of range of motion in his knee. Following his surgery in 1996, Pate returned to work as a belt patrolman, and he continued to work at that position until he was laid off in May 1997. Pate says that his knee continues to swell and that he is unable to participate in normal activities. Pate also states that he has to elevate his knee at night to reduce the swelling. Thus, Pate argues, "[t]he simple fact that he has to elevate his knee and take precautions for the swelling meets the criteria set out in the caselaw of the State of Alabama." Pate's brief at 16.
The occasional swelling in Pate's knee does not qualify, under the Larson test, as an injury that extends to other parts of the body and produces a greater incapacity than would otherwise result from his injury. The injury and pain Pate suffers are similar to those suffered by the plaintiffs in Wolfe v. Dunlop Tire Corp., 660 So.2d 1345 (Ala.Civ.App.1995), and Whitehead v. International Paper Co., 610 So.2d 400 (Ala.Civ.App.1992). In Wolfe, the Court of Civil Appeals affirmed the judgment of the trial court, which held that the plaintiff had failed to present evidence sufficient to remove his injury from the scheduled provisions of the workers' compensation act. The plaintiff, Kevin Wolfe, had injured his knee when he stepped from a platform. 660 So.2d at 1347. Wolfe testified that the injury to his knee had "affected other parts of his body and that it had limited his ability to perform certain physical tasks." Id. Wolfe stated that he experienced a "dull throb at the end of the day." Id. Nevertheless, Wolfe testified, he could lift and carry 50 pound bags of feed, and Wolfe's doctor testified that Wolfe had not been treated for any condition other than the knee injury. 660 So.2d at 1347-48.
In Whitehead, the Court of Civil Appeals affirmed the judgment of the trial court, which held that the plaintiff, Florine Whitehead, had failed to present evidence indicating that her knee injury should be removed from the provisions of § 25-5-57. 610 So.2d at 401. Whitehead had injured her knee while she was working for International Paper. She testified that the pain of her knee injury caused her to be distracted from daily activities. 610 So.2d at 402. Whitehead also testified that she was restricted to light-duty activities. Id.
Like the plaintiffs in Wolfe and Whitehead, Pate failed to present to the trial court substantial evidence indicating that "the effects of the loss of the member extend to other parts of the body and interfere with their efficiency." 4 Larson, Workers' Compensation Law § 87.02. Pate has not presented any evidence, substantial or otherwise, indicating that his knee injury extended to any other part of his body. The fact that Pate suffers occasional swelling, pain, and discomfort in his knee is not evidence tending to show that the injury has extended to other parts of his body.[11]
*837 We conclude, therefore, that the trial court erred in holding that Pate's injury was such that it fell outside the compensation schedule set out in § 25-5-57. Thus, we reverse the trial court's judgment and remand the cause.
REVERSED AND REMANDED.
HOUSTON, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
MOORE, C.J., and WOODALL, J., concur in the result.
JOHNSTONE, J., dissents.
MOORE, Chief Justice (concurring in the result).
I agree with the majority's conclusion that Pate's injury does not qualify for unscheduled benefits under Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968), or any other test that has been used by this Court to review workers' compensation awards for disabilities. I must respectfully disagree, however, with the rationale used by the Court to reach that result.
The portions of the Workers' Compensation Act at issue in this case are §§ 25-5-57(a)(3)a. and 25-5-57(a)(3)d. Section 25-5-57(a)(3)a., in essence, states that compensation for permanent partial disability for losses included in the schedule, will be 66 2/3 percent of the worker's average weekly earnings, for the number of weeks set out in the schedule for each qualifying member. Section 25-5-57(a)(3)d. states: "The permanent and total loss of the use of a member shall be considered as equivalent to the loss of that member, but in such cases the compensation specified in the schedule for such injury shall be in lieu of all other compensation, except as otherwise provided herein." (Emphasis added.)
As is apparent from reading § 25-5-57(a)(3)d. in particular and § 25-5-57 as a whole, no provision is made in the statute for compensation outside of the schedule for injuries to scheduled members. It follows that the allowance for benefits outside of the schedule, first permitted in Bell, is an exception this Court carved out for those instances where it felt that "the injury to a scheduled member caused such impairment to the body as a whole that the benefits reflected on the schedule were not appropriate." 837 So.2d at 834.
Such an exception, while no doubt well-intended, was created by the Court in direct contravention to the language of the statute, which explicitly states that the scheduled benefits shall be the only compensation for qualifying injuries. The Court has only as much discretion as a statute allows; the Legislature created workers' compensation, and if it had wanted an exception to scheduled benefits for permanent partial disabilities, it could have provided for one. Thus, in creating the Bell exception, this Court stepped beyond its authority. No matter how many cases our courts have decided based upon the exception since its inception, the courts cannot change the law on this matter, so long as the Legislature leaves the statute unaltered.
The majority argues that the Legislature's readoption of the Code section at issue ratified the Bell decision. However, the reality may be just the opposite. It could be argued that the subsequent reenactment of a Code section is an explicit rejection of the Court's erroneous ruling. By not incorporating into the reenactment the court's ruling that went beyond the scope of the statute, the Legislature has de facto rejected it. In any event, the argument is tantamount to saying that two wrongs make a right: the Court's misinterpretation *838 in Bell plus the Legislature's failure to correct that decision equals good law. I cannot ascribe to such a skewed equation.
Instead of recognizing its mistake, the majority has chosen to correct the wayward progeny of Bell by replacing it with a new test. While the new test may clarify what the Court intended to do in Bell, in effect it merely replaces one illegitimate formula with another. Cases on this subject strayed from the purported intentions of the Bell Court for the same reason the Court created the Bell test in the first place: a perceived unfairness in the statutory scheme. The Court perceived the language of § 25-5-57(a)(3)d. as being too harsh, and it attempted to "correct" it by conjuring up the Bell test. In the same way, courts have evaluated various on-the-job injuries and perceived the schedule to provide inadequate compensation for the pain suffered by the victim and consequently manipulated the Bell test to take those injuries off the schedule. There is no reason to believe that the lower courts will not do the same thing with the new test, when the standardless benchmark of "unfairness" is the underlying basis for the exception.
The proper benchmark for this Court and the lower courts ought to be the statute itself, rather than exceptions of our own creation that we can expand or contract on a whim. Pate's injury falls under the schedule, which means he is entitled to scheduled benefitsnothing more. While that result or the law on which it is based may seem harsh or unfair, this Court is not the branch of government that possesses the authority to correct that perceived injustice. Accordingly, I cannot abide by the new test created by the Court to deal with compensation of permanent partial disability injuries.
JOHNSTONE, Justice (dissenting).
The very text of § 25-5-57(a)(3), Ala. Code 1975, reveals that the schedule in § 25-5-57(a)(3)a. applies only to "the loss of or "loss of use of" the member. The schedule does not purport to govern the compensation due for permanent partial disability resulting from chronic pain or other complications of injuries to the members specified in the schedule.
Because some losses of members and losses of use of members are not attended by chronic pain or other complications, we cannot assume that the Legislature intended for the schedule to govern disability resulting from chronic pain or other complications. "The workmen's compensation laws are remedial in nature and are to be liberally construed and applied in order to effect their beneficent purposes." Hilyard Drilling Co. v. Janes, 462 So.2d 942, 943 (Ala.Civ.App.1985). "Alabama's [workers'] compensation laws should be liberally construed in favor of the employee in order to advance and effectuate their beneficent purposes." Culbreth v. Woodham Plumbing Co., 599 So.2d 1120, 1123 (Ala.1992).
Even governing only the simple loss of members and loss of use of members, the schedule obviously exhausts the capacity of the Legislature to anticipate combinations and permutations of variables. The schedule already reads like a price list at a cannibal's meat market: "For the loss of an eye and a foot, 300 weeks.... For the loss of one arm and the other hand, 400 weeks etc.
The refusal of the Legislature over the years to overrule the Court of Civil Appeals and this Court in the treatment of disability resulting from chronic pain or other complications in scheduled members manifests an understanding by the Legislature that any effort to govern compensation for such disability by a schedule would introduce too many variables for a schedule *839 to accommodate. Obviously the Legislature has made a considered decision to acquiesce in the judicial developments.
Because chronic pain, swelling, and other complications do result in "other permanent partial disabilities not above enumerated," § 12-5-57(a)(3)g., they should be compensated as nonscheduled disabilities in accordance with § 25-5-57(a)(3)g. Trial judges are usually good at detecting malingering and stalwart in denying compensation for it. Trial judges are fully capable of deciding accurately whether real complications are diminishing a worker's wages or earning power.
As the main opinion acknowledges, the decisions of the Court of Civil Appeals have evolved so that the jurisprudence of that court now allows compensation for disability resulting from chronic complications of injuries to members identified in the schedule, irrespective of whether the complications extend to a specifically identifiable part of the body not included in the schedule. This evolution seems consistent with the text and intent of the statute, as I have discussed, and consistent with Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968), as well.
The rule in Bell reads:

"[A]lthough the injury itself is to only one part or member of the body, if the effect of such injury extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, or the injury causes an abnormal and unusual incapacity with respect to the member, then the employee is not limited in his recovery under the Workmen's Compensation Law to the amount allowed under the schedule for injury to the one member."
282 Ala. at 646, 213 So.2d at 811 (emphasis added). This language can be construed reasonably to include all disability resulting from chronic complications of the injury to the member, as distinguished from simple loss of the member or loss of use of the member. Indeed, in Bell, every aspect of the injury except for the physical pain and mental anguish it caused was confined to the member, the leg itself:
"`[H]is knee would swell, particularly at night, and would be so painful that he could not sleep.... His nervous system was affected, as evidenced by his emotional breakdown during the hearing;... he would suffer pain at times from periods extending from two hours to a day or two; the 15 pound brace absorbed plaintiff's energy, but the energy loss was of less importance than the pain he would suffer without the brace; when he was not working he kept his leg elevated to prevent swelling; he had lost his stability.'"
282 Ala. at 644, 213 So.2d at 810 (quoting the findings of the trial court) (emphasis added). Yet the trial court, approved and affirmed by the Supreme Court, recited and found:
"`Plaintiff was examined in open court, and the Court observed him, saw the extent of his injuries, the slowness and difficulty with which he moved, and the condition of his leg and body. The Court finds that plaintiff's injury is far more extensive than a leg injury.'"
282 Ala. at 645, 213 So.2d at 811. The award and affirmance of unscheduled benefits to the Bell plaintiff can be deduced only to be an implicit holding that disability from chronic pain or other complications of an injury otherwise localized to a member identified in the schedule is compensable outside the schedule.
In the case now before us, the plaintiff's chronic complications are the same as those of the Bell plaintiffpain and swelling in the knee. I respectfully submit that *840 the statute, the cases from the Court of Civil Appeals, and Bell, all require the same judgment on appellate review of this case as in Bellan affirmance of the award off the schedule. We should not overrule Bell or the precedents developed by the Court of Civil Appeals and should not limit to the schedule compensation for disability from chronic pain or other complications of an injury otherwise localized to a member identified in the schedule.
NOTES
[1] In its brief to this Court, Drummond states that Pate's family physician referred him to Dr. Wouters; however. Pate states that Dr. William A. Birdsong, the company doctor, referred him to Dr. Wouters.
[2] On July 26, 1996, Pate saw Dr. Gary Russell, Dr. Wouters's partner, who administered a steroid injection. It appears from Dr. Wouters's testimony that Dr. Wouters treated Pate on all subsequent visits.
[3] In his complaint, Pate also alleged that he contracted occupational pneumoconiosis while working for Drummond. However, Pate dismissed this claim before trial, and Pate's claim for benefits based on his knee injury was the only claim before the trial court.
[4] 156 A.L.R. 1344 stated, at the time Bell was decided:

`The rule, however, is well established that where an employee has received a specific injury which spreads to other parts of the body and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, or the injury causes an abnormal and unusual incapacity with respect to the member, the employee is not limited to a recovery of the special allowance provided for in case of injury to a specific member or members, but may recover under the provisions of the act for compensation in case of disability.' Bell, 282 Ala. at 645, 213 So.2d at 811.
[5] A.M.R. Servs. v. Butler, 697 So.2d 472 (Ala. Civ.App.1997); Gold Kist, Inc. v. Casey, 495 So.2d 1129 (Ala.Civ.App.1986); Republic Steel Corp. v. Kimbrell, 370 So.2d 294 (Ala. Civ.App.1979); and Richardson Homes Corp. v. Shelton, 336 So.2d 1367 (Ala.Civ.App. 1976).
[6] Checkers Drive-In Restaurant v. Brock, 603 So.2d 1066 (Ala.Civ.App.1992).
[7] American Cast Iron Pipe Co. v. Uptain, 680 So.2d 378 (Ala.Civ.App.1996).
[8] U.S. Steel v. Nelson, 634 So.2d 134 (Ala.Civ. App.1993); Smith v. Capps, 414 So.2d 102 (Ala.Civ.App.1982); Dale Motels, Inc. v. Crittenden, 50 Ala.App. 251, 278 So.2d 370 (1973).
[9] It is true, as Chief Justice Moore notes in his special writing, that "no provision is made in the statute for compensation outside of the schedule for injuries to scheduled members." Ex parte Drummond Co., 837 So.2d at 837 (Moore, C.J., concurring in the result). Were we writing this opinion on a clean slate, we might well decide it differently from the way we do today; however, we are not writing on a clean slate. In 1968, this Court adopted the Bell test. The Legislature has had more than 30 years to overrule or modify that decision; it has chosen not to do so. Moreover, in those 30 years, the Legislature has amended the Workers' Compensation Act. "`[W]hen the legislature readopts a code section, or incorporates it into a subsequent Code, prior decisions of this court permeate the statute, and it is presumed that the legislature deliberately adopted the statute with knowledge of this court's interpretation thereof.'" Jones v. Conradi, 673 So.2d 389, 392 (Ala.1995) (quoting Edgehill Corp. v. Hutchens, 282 Ala. 492, 495-96, 213 So.2d 225, 227-28 (1968)).
[10] Bell, relying on the A.L.R. note, added to the Larson language a second basis for departing from the workers' compensation schedule: "or the injury causes an abnormal and unusual incapacity with respect to the member." 282 Ala. at 646, 213 So.2d at 811. It is unclear what conditions this second prong of the Bell test was intended to cover. We note that this Court has not applied this second prong and that where the Court of Civil Appeals has purported to have applied it, that court has actually gone well beyond the language of the test and considered other characteristics of the claimant. See Smith v. Capps, 414 So.2d 102, 104 (Ala.Civ.App.1982) ("[U]nder the evidence as to Capps' lack of education, his retardation and work history and present lack of capabilities, the trial court could have legitimately concluded that the injury caused an abnormal and unusual incapacity, the second alternative contained in the [Bell] rule."); U.S. Steel v. Nelson, 634 So.2d 134, 137 (Ala.Civ.App.1993) ("Considering Nelson's age, work history, education, and his lack of present ability, the trial court had ample evidence before it to determine that the amputation [of Nelson's thumb] caused such abnormal and unusual incapacities with his body as a whole that it significantly affected Nelson's ability to earn and to be employed."); American Cast Iron Pipe Co. v. Uptain, 680 So.2d 378, 379 (Ala.Civ.App.1996) ("Because there is evidence to support a finding that Uptain suffered an injury that `affects the other parts of the body' and that the injury caused `an abnormal and unusual incapacity,' the trial court was not required to base Uptain's recovery on the schedule set out in § 25-5-57(a)(3)a."). This additional language appears to add nothing but ambiguity to the thoughtful language of Larson's treatise; therefore, we decline to consider the so-called second prong of the Bell test a part of the test that we adopt today.
[11] This case does not present a situation in which the pain, although isolated to the scheduled member, causes a disability to the body as a whole. We recognize that pain can be totally, or virtually totally, debilitating, but this case does not present such a situation; therefore, we decline to address that situation here.