993 So.2d 451 (2006)
ALABAMA WORKMEN'S COMPENSATION SELF-INSURERS GUARANTY ASSOCIATION, INC.
v.
Arthur WILSON.
2040523.
Court of Civil Appeals of Alabama.
June 16, 2006.
Rehearing Denied September 1, 2006.
Certiorari Quashed March 21, 2008 Alabama Supreme Court 1051776.
Stephen E. Brown and John B. Holmes III of Maynard, Cooper & Gale, P.C., Birmingham, for appellant.
Tracy W. Cary of Morris, Cary, Andrews, Talmadge & Jones, LLC, Dothan, for appellee.
PITTMAN, Judge.
This appeal concerns the propriety of an award of permanent-total-disability benefits under the Alabama Workers' Compensation Act, Ala.Code 1975, § 25-5-1 et seq. ("the Act"), to Arthur Wilson ("the employee"), who suffered injuries to his hands in the line and scope of his employment while working for Johnston Industries, Inc., doing business as Southern Phenix Textiles.
After a dispute arose concerning the benefits to which the employee was entitled under the Act, the employee sued Johnston Industries, Inc., in the Russell Circuit Court, seeking a judgment awarding benefits under the Act. Johnston Industries, *452 Inc., subsequently sought bankruptcy protection, and the Alabama Workmen's Compensation Self-Insurers Guaranty Association, Inc., a nonprofit corporation created by the Alabama Legislature (see generally § 25-5-250 et seq., Ala.Code 1975), was substituted as the defendant. Because that entity's insolvency fund is statutorily entitled to "all defenses of" and is "subrogated to all rights of [an] insolvent employer" such as Johnston Industries (see Ala.Code 1975, § 25-5-255(1)), in this opinion we will refer to the Association as "the employer" so as to simplify our summary and our analysis of the case.
Before trial, a number of matters were stipulated to by the parties, including causation, notice, the trial court's jurisdiction, timeliness of the employee's action, and the permanency of the employee's injury. As trial began, counsel for the employer asserted that the employee's injury should be compensated according to the schedule of members in the Act, whereas counsel for the employee averred that the employee should be compensated based upon provisions in the Act for compensation awards in situations of permanent and total disability. After an ore tenus proceeding at which three witnesses testified and a number of documentary exhibits were admitted into evidence, the trial court entered a judgment in favor of the employee. In pertinent part, the trial court determined that "the effects of injuries to [the employee's] wrists extend to other parts of his body, including his arms, shoulders and neck, and interfere with their efficiency," that the employee's "severe pain has created a greater incapacity than would otherwise result from his injury," and that the employee's "injury satisfies the definition of permanent and total disability" in the Act. The employer filed a motion to alter, amend, or vacate the trial court's judgment, which was denied 90 days later by the operation of Rule 59.1, Ala. R. Civ. P.; the employer then appealed to this court.
Under the Act, our review of the standard of proof and our consideration of other legal issues in a workers' compensation case are without a presumption of correctness. Ala.Code 1975, § 25-5-81(e)(1). In contrast, when we review a trial court's findings of fact, we will not reverse a judgment based upon those findings if those findings are supported by "substantial evidence," see § 25-5-81(e)(2), a term interpreted "to mean `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)).
The employer raises two issues on appeal. It first contends that the employee's recovery is limited to benefits set forth in the Act as to injuries to scheduled members. As an alternative contention, the employer asserts that the employee has suffered only a partial vocational disability such that the employee is not entitled to benefits under the Act based upon a permanent and total disability.
The Act provides that in cases in which an employee has suffered a permanent loss to one or more "members," or body parts, that appear in a statutory list, or "schedule," which enumerates 34 separate items of loss, the employee is to be awarded compensation amounting to 66 2/3 percent of the employee's average weekly earnings multiplied by the number of weeks specified in the schedule for the particular member or members. Ala. Code 1975, § 25-5-57(a)(3)a. For example, one entry in the schedule provides that the loss of "two arms" will warrant an award of 400 *453 weeks' worth of compensation. Ala.Code 1975, § 25-5-57(a)(3)a.24. Under the Act, the permanent and total loss of use of a scheduled member is treated as the equivalent of the complete loss of that member, i.e., when an employee has totally lost the use of a member, the employee is to receive the number of weeks of compensation equal to that set forth in the schedule "in lieu of all other compensation." Ala. Code 1975, § 25-5-57(a)(3)d. However, if a work-related injury results in less than a total loss of use of a scheduled member, compensation is limited by the Act to that proportion of the number of weeks specified in the schedule that "the extent of the injury to the member bears to its total loss." Id.
In Ex parte Drummond Co., 837 So.2d 831 (Ala.2002), the Alabama Supreme Court noted that certain injuries had been judicially excepted from the operation of the schedule of members in the Act. That court's previous primary statement of that exception had indicated that an injury occurring to a scheduled member should be compensated without regard to the schedule if (1) "`the effect of such injury extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury,'" or (2) "`the injury causes an abnormal and unusual incapacity with respect to the member.'" 837 So.2d at 833 (quoting Bell v. Driskill, 282 Ala. 640, 646, 213 So.2d 806, 811 (1968)). However, in Drummond, the Supreme Court expressly overruled Bell and its progeny and stated a more stringent test of whether an injury to a scheduled member should be compensated outside the schedule; under Drummond, "`if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.'" 837 So.2d at 834 (quoting 4 Lex K. Larson, Larson's Workers' Compensation Law § 87.02 (2001)).
We note that the employee has attempted to assert in his appellate brief that this court should affirm the trial court's judgment based on that portion of Bell referring to "an abnormal and unusual incapacity with respect to the member" as constituting a potential basis for rejecting the applicability of the schedule of compensation in the Act.[1] However, in Drummond, the Supreme Court expressly disavowed the continued viability of that portion of Bell, stating that it "decline[d] to consider the so-called second prong of the Bell test a part of the test that we adopt today." 837 So.2d at 835 n. 10. Similarly, we cannot accept the principle, apparently espoused by the employee, that "pain not contemplated by the schedule" may itself warrant an award of compensation outside the schedule of members, unless such pain amounts to an "`effect[] of the loss of the member'" that "`extend[s] to other parts of the body and interfere[s] with their efficiency.'" 837 So.2d at 834; see also id. at 836 n. 11 (declining to address hypothetical situation in which "pain, although isolated to the scheduled member, causes a disability to the body as a whole") and Kohler Co. v. Miller, 921 So.2d 436, 441 (Ala.Civ.App.2005) (indicating that substantial evidence of "constant and unremitting pain of such severity" as to debilitate an employee's body as a whole "in a manner not contemplated by the schedule" *454 might meet the Drummond standard).
We thus turn to whether the employee's injury falls within or outside the exception to the schedule that was enunciated in Drummond. The employee testified at trial that he had suffered an injury when a ladder on which he had been working gave way and fell onto a concrete floor, simultaneously causing the employee to fall while holding the ladder; in the fall, the employee's hands were caught between the falling ladder and the floor, causing both of his wrists to be crushed. Although both of the employee's wrists were fractured in the fall, the left-wrist fracture was treated with a cast, and only the right wrist required surgical treatment.
According to the employee's principal treating physician, Dr. Richard Herrick, the employee experienced tenderness, nerve compression, and possible reflex sympathetic dystrophy ("RSD") symptoms (i.e., excessive swelling and stiffness) in his right arm after undergoing the surgery to repair his right wrist. The employee then underwent another surgery to release the right ulnar and median nerves. Because the employee relied more on his left arm after his injury, he developed tendinitis in his left hand and wrist; he underwent a number of elbow and wrist injections, two more corrective wrist surgeries as to his right arm, and injections in the neck area in an effort to address overactivity in the sympathetic nerves in the arm. Dr. Herrick testified at his deposition that the employee remained at risk of developing posttraumatic osteoarthritis in his right wrist, although he could not state that such a development would be an "absolute necessity"; however, he also opined that the employee's RSD had "burnt out" to the point of being unmeasurable.
When asked the direct question at his deposition whether he had found "any evidence of [the employee's] injuries or symptoms extending beyond his left upper extremity or his right upper extremity to any other part of the body or including any other part of the body," Dr. Herrick referred only to temporary pain that the employee had suffered in his "shoulder girdles." As to the employee's present condition, Dr. Herrick testified that the employee's injuries and symptoms were limited to his two "upper extremities" and "do not extend to or include any other part of the body." Finally, Dr. Herrick testified that the employee's "course of symptoms and problems and treatments" were not unusual.
The employee testified at trial that he had been prescribed a number of prescription medicines and had taken over-the-counter anti-inflammatory and analgesic medications in order to relieve pain he had suffered as a result of his injury and the subsequent treatment and therapy he had undergone. The employee also testified that he had been prescribed a transcutaneous electrical nerve stimulation, or TENS, unit designed to interfere with nerve-pain sensations. The employee testified on direct examination that he felt pain in both hands that extended up his wrists and arms; on an ascending 10-point scale, the employee rated his continuous pain as a 3 or 4 and his occasional pain as a 6, 7, or even 8. The employee also testified that his nightly sleep had been reduced from seven or eight hours to three or four hours.
However, the employee admitted on cross-examination that he tries to walk 6 miles a day for 5 days each week, can use his right hand to lift weights of between 10 and 15 pounds, and can use his left hand to lift weights of between 30 and 35 pounds. Moreover, although the employee had testified on direct examination that he felt pain in his right shoulder on occasion, the employee admitted on cross-examination *455 that his injury had not spread to or caused any disability or impairment in any other part of his body other than his arms and that there was nothing else wrong with his body that was limiting or impairing him other than his hands and arms. Finally, the expert witness called by the employee to testify concerning the employee's vocational disability testified that the employee's "disabilities or limitations coming from th[e] injury" were limited to the employee's arms from the elbow down; similarly, the employer's vocational expert testified that he had perceived no evidence indicating that the employee's injuries or disabilities extended to or impaired some other part of the employee's body other than the two upper extremities.
Given the above-stated facts, we cannot conclude that there is substantial evidence to support the trial court's identification of the employee's arms, neck, and shoulder as a component of its determination that "the effects of injuries to [the employee's] wrists extend to other parts of his body... and interfere with their efficiency." Any interference with the function of both of the employee's arms is of no legal import given that a loss of both arms is itself a scheduled injury. See Stone & Webster Constr., Inc. v. Lanier, 914 So.2d 869, 876-78 (Ala.Civ.App.2005) (holding that effects of injury to right knee upon uninjured left knee did not take compensation claim outside schedule; schedule contains entry for loss of both legs); cf. Ex parte Dunlop Tire Corp., 772 So.2d 1167, 1170 (Ala.2000) ("the loss of an arm includes the loss of a hand"). Nor is there evidence in the record indicating that the employee suffered any effects of his injury in his neck apart from having pain injections there. Although the employee initially indicated that he had experienced pain in his right shoulder, his testimony on cross-examination contradicted that proposition; in any event, there was no indication in the record that any pain symptoms the employee might occasionally have experienced in his right shoulder amounted to "constant and unremitting pain" or otherwise "`interfere[d] with [its] efficiency'" (see Kohler, 921 So.2d at 441, and Drummond, 837 So.2d at 834).
The employee also asserts that the injury has affected his ability to sleep and thus to concentrate. To the extent that the employee thereby asserts that his loss of sleep constitutes an effect of the injury to a scheduled member "`extend[ing] to other parts of the body and interfer[ing] with their efficiency'" under Drummond, we note that the Supreme Court, in deciding Drummond, specifically overruled Richardson Homes Corp. v. Shelton, 336 So.2d 1367 (Ala.Civ.App.1976), a case in which we had identified a sleep impairment after an injury to a scheduled member as an effect of that injury extending beyond the member. Drummond, 837 So.2d at 834 n. 5 and 835. We infer from the Supreme Court's express overruling of Richardson Homes that more than a partial incidental sleep loss will be required to take an injury to a scheduled member outside the scope of the scheduled compensation.
Based upon the foregoing facts and authorities, we conclude that the trial court erred in awarding compensation to the employee based upon a permanent and total disability outside the scope of the schedule of injuries. That court's judgment is reversed, and the cause is remanded for that court to calculate the benefits to which the employee is entitled based upon a permanent partial disability to a scheduled member, i.e., two arms. See Ala.Code 1975, § 25-5-57(a)(3) a.24.
REVERSED AND REMANDED.
CRAWLEY, P.J., and THOMPSON and BRYAN, JJ., concur.
MURDOCK, J., dissents, with writing.
*456 MURDOCK, Judge, dissenting.
Because of the deference due a trial court under the ore tenus standard, I must respectfully dissent from the reversal of the trial court's judgment in this case. The record contains substantial evidence from which the trial court could reasonably have concluded that the employee, even when he avoids the use of his hands, suffers "effects" as a result of his injuries that "extend[] to other parts of [his] body and interfere[] with their efficiency," including parts of his upper body, and debilitating effects as to his ability to sleep and concentrate. See Masterbrand Cabinets, Inc. v. Johnson, 984 So.2d 1136, 1144-45 (Ala. Civ.App.2005) (n. 3 and accompanying text). Given the differences between the facts of the present case and those presented in Richardson Homes Corp. v. Shelton, 336 So.2d 1367 (Ala.Civ.App.1976), the overruling of Richardson Homes by our Supreme Court in Ex parte Drummond Co., 837 So.2d 831, 834 (Ala.2002) (n. 5 and accompanying text), does not support the reversal of the trial court's judgment in the present case. See also Ex parte Drummond Co., 837 So.2d at 836-37 n. 11.
NOTES
[1] That position is perhaps unsurprising in light of the trial court's statement in its judgment that the employee's "severe pain has created a greater incapacity than would otherwise result from his injury."