MOORE, Judge.
In an earlier appeal, this court reversed a judgment awarding,Stephen Dale Bush (“the employee”) permanent-total-disability benefits under the Alabama Workers’ Compensation Act (“the Act”), Ala.Code 1975, § 25-5-1 et seq., and remanded the case for the Jefferson Circuit Court (“the trial court”) “to make appropriate findings of fact based on the evidence admitted at trial as to whether the schedule [set forth in § 25-5-57(a)(3), Ala.Code 1975,] or an exception to the schedule applies and to amend its judgment accordingly.” Goodyear Tire & Rubber Co. v. Bush, 160 So.3d 787, 794 (Ala.Civ.App.2014). The trial court' entered an amended judgment on November 4, 2014, concluding that the employee’s right-knee injury should be compensated as an injury outside “the schedule” in the Act because the injury extended to other parts of his body and interfered with their efficiency. See Ex parte Drummond Co., 837 So.2d 831 (Ala. 2002). The trial court again awarded the employee permanent-total-disability benefits. Goodyear Tire & Rubber Company (“the employer”) timely appealed from the amended judgment..
On appeal, the employer argues that the trial court erred in treating the employee’s right-knee .injury as a nonscheduled injury and in awarding the employee permanent-total-disability benefits. Section 25-5-81 (e), Ala.Code 1975, a part of the Act, establishes our standard of review:
“(1) In reviewing the., standard of proof set. forth herein and other legal . issues, review by the Court of Civil Ap *1151 peals shall be without a presumption of correctness.
“(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.” ■
“Substantial evidence” refers to “ ‘evidente of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989), and citing. Ala.Code 1975, § 12-21-12(d)).
In its findings of fact, the trial court found that the employee had sustained a permanent injury to his right knee, “which indisputably resulted in the loss of use of a scheduléd member (his right leg).” Ordinarily, the employee would be entitled to compensation for the partial loss of use of his right leg under § 25-5-57(a)(3)d. of the Act based on the percentage of loss of the use of the member. See, e.g., Dubose Constr. Co. v. Simmons, 989 So.2d 1140 (Ala.Civ.App.2008). However, “ ‘if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.’ ” Ex parte Drummond Co., 837 So.2d at 834 (quoting 4 Lex K Larson, Larson’s Workers’ Compensation Laws § 87.02 (2001)). In this case, the trial court found that the employee should not be limited in his recovery to scheduled permanent-partial-disability, benefits because, it determined, the effects of the employee’s right-knee injury have extended to and interfered with the efficiency of other parts of the employee’s body. The primary question before this court is whether those findings are supported by substantial evidence.
Whether the effects of a scheduled injury extend to another part of the body ■ amounts to a question of .medical causation. See Boise Cascade Corp. v. Jackson, 997 So.2d 1042 (Ala.Civ.App. 2008). The effects of the injury may be considered to have extended to other parts of the body if sufficient evidence shows that those effects cause or contribute to pain, limitation, or other symptoms in those parts of the body. Id. In determining= whether substantial evidence supports the trial court’s findings on medical causation, this court must consider the totality of the evidence, including the expert, lay, and- circumstantial evidence, viewed in a light most favorable to the those findings. Hokes Bluff Welding & Fabrication v. Cox, 33 So.3d 592, 596 (Ala.Civ.App.2008).
The employee testified that, in February 2011, he twisted and fell on his right knee while descending a flight of stairs at work. Dr. Edward Kissel, an orthopedic surgeon, eventually treated the employee for that injury, diagnosing a tom medial and lateral meniscus, which he addressed operatively on October 28, 2011. Dr. Kissel followed up with the employee until April 5, 2012, when the doctor opined that the employee had reached maximum medical improvement, assigning the employee permanent light-duty restrictions and an 8% medicalrimpairment rating to the body as a whole. Dr. Kissel testified via deposition that the surgery left a dime-sized area without cartilage to act as a “shock absorber” between the bones of the employee’s leg, which the doctor expected would cause the employee continued discomfort. Dr. Kissel predicted that the employee would one day need to have his knee replaced with an artificial joint.
The trial court summarized Dr. Kissel’s deposition testimony as follows:
“The fair import of Dr. Edward Kis-sel’s testimony reflects that the physi- *1152 ' cal consequences of [the employee’s] right-knee injury, such as pain, dysfunction, impaired sensation, weakness, stiffness, and decreased range of motion have caused other, non-scheduled, parts of [the employee’s] body to be less efficient. For example, Dr. Kissel prohibited [the employee] from: (1) lifting, carrying, pushing or pulling more than -20 pounds; (2) bending at the waist, crouching, kneeling, stooping, or squatting; and, (3) ... climbing stairs, ladders, or- poles. Since the right-knee injury has reduced [the employee’s] stability and balance, Dr. Kissel also . ordered [the employee] to avoid navigating unprotected heights and to take additional precautions- when walking to avoid falling. Certainly there was no need for Dr. Kissel to assign separate restrictions for [the employee’s] back, hips, shoulders, chest, left leg, and arms, since they were encompassed within the restrictions which he already placed on [the employee] because of his knee injury. Nevertheless, Dr. Kissel specifically testified that [the employee’s] right-knee injury affects his body as a whole and that, even with a total knee replacement, the effects were not likely to subside. In other words, even with a surgically repaired knee, the limitations on the other parts of his body would remain. Accordingly, the court finds that the medical testimony sufficiently connects the dysfunction in [thé employee’s] joints, muscles, lumbar vertebrae, and the disruptions in his equilibrium to the knee injury he sustained while working for [the employer].”
However, in the deposition, no one directly questioned Dr. Kissel about whether or how the effects of the injury to the employee’s right knee extended to or affected other parts of the employee’s body. Consequently, Dr. Kissel did not testify at any point in the deposition that the injury to the right knee affected any other part of the employee’s body. Dr. Kissel did assign the employee a- medical-impairment rating to the body as a" whole, but he testified that the impairment rating was “for his whole knee”; Dr. Kissel did not state that the impairment rating was due to any adverse effects of the right-knee injury on the employee’s body as a whole. In Ex parte Drummond Co., supra, when clarifying the type of evidence that would suffice to support removing an injury from the schedule, our supreme court specifically overruled those cases holding that the schedule could be avoided based on an impairment rating to the body as a whole. 837 So.2d at 834 n. 7 and accompanying text.
Dr. Kissel did assign the employee permanent . light-duty restrictions as follows: (1) light work, lifting 20 pounds maximum, with frequent lifting and/or carrying of objects weighing up to 10 pounds; (2) no climbing of stairs, ladders, or poles; (3) no squatting or kneeling; and (4) no stooping. Dr. Kissel did not, however, state or imply that those restrictions arose fi’om problems the employee was experiencing with other parts of his body as a result of the right-knee injury. Dr. Kissel also did not testify that he had imposed any permanent restrictions as a result of instability in the employee’s knee or his lack of equilibrium. To the contrary, Dr. Kissel testified that the employee did not have any instability in his knee from the injury, and nowhere in his deposition does Dr. Kissel testify that the employee was experiencing any lack or disruption of equilibrium. At any rate, in Ex parte Drummond Co., supra, our supreme court overruled those cases treating an injury as nonscheduled based on work restrictions. 837 So.2d at 834 n. 6 and accompanying text.
*1153 Dr. Kissel was the only physician' to treat the employee’s right-knee injury and the only physician to testify in the case. His medical opinions establish that the employee-has a permanent, degenerative, and painful right-knee injury due, in part, to his work-related accident. But nothing in Dr. Kissel’s deposition testimony establishes that the pain or other symptoms from the knee injury extend to or interfere with the efficiency of other parts of the employee’s body. Furthermore, a review of Dr. Kissel’s medical records, which are attached to his deposition, reveals that the employee complained solely of right-knee pain and dysfunction on each visit.
In his brief to this court, the employee argues that the physical-therapy notes in Dr. Kissel’s records support the trial court’s findings because those notes show that the right-knee injury affected the employee’s hips. The notes show that the employee had “4/5” hip flexion and extension on September 6, 2011, and “4+/5” hip flexion -and extension after 9 therapy visits as of September 23, 2011. The physical-therapy notes do not show whether the flexion and extension- figures represent “abnormalities,” as the employee -asserts, or whether the employee’s right-knee injury caused or contributed to those asserted abnormalities. Hence, the trial court could not have inferred from those notations in the physical-therapy notes that the employee’s right-knee injury extended to and interfered with the efficiency of the employee’s hips.
The record does not contain any expert medical testimony or scientific evidence constituting substantial evidence to support the trial court’s findings. Such evidence is not necessarily indispensable in workers’ compensation cases, however. “As the finder of facts, ... the trial court is authorized to draw any reasonable inference from the evidence, including conclusions of medical facts that, are not within the peculiar knowledge of medical experts.” Ex parte Price, 555 So.2d 1060, 1062 (Ala.1989). “Based on Pnce, a trial court may make a finding of medical causation without the benefit of any direct expert medical testimony, so long as the other evidence is sufficient to sustain its finding.” Hokes Bluff Welding & Fabrication v. Cox, 33 So.3d at 595. In an appropriate case, a finding of medical causation may be supported solely by lay and circumstantial evidence in the record; “[i]t is in the overall substance and effect of the whole of the evidence ... that the test finds its application.” Price, 555 So.2d at 1063. “Whether the claimant has satisfied this test in the absence of medical testimony ... must be determined on a case-by-case basis.” Price, 555 So.2d at 1062. Therefore, in this case, we look at the lay and circumstantial evidence to determine whether it supports the trial court’s finding that the injury td the employee’s knee extends to other parts' of his body. See generally Hokes Bluff Welding & Fabrication v. Cox, supra.
The employee testified that he had injured his'lower back in 1978 after he wrecked while driving an automobile, that he had developed a curvature in his lumbar spine, that he would occasionally experience flare-ups of debilitating lower back pain, that he always kept Tylenol and Aleve brand nonprescription pain relievers in his toolbox while working to use for his lumbar pain, and that his back condition caused him to limp. In the amended judgment, the trial court addressed the effect of the right-knee injury on the employee’s preexisting back problem as follows:
“[The employee] has had back problems since 1978, which, apparently, stemmed from a car wreck. On occa- ■ sion, his back pain would be so severe that he would lay on the floor until the *1154 pain subsided. After a brief respite, he would resume his usual work activities. • Before this injury, [the employee] was able to abate his discomfort with over-the-counter analgesics and. by taking momentary breaks. Despite his history of back, problems, [the employee] has been a mechanic all of his working life (and in excess'of thirty (30) years since the onset of his back pain). Now, however, he has been unable to perform the duties of a mechanic since his workplace injury. The circumstantial evidence suggests a causal relationship between the right knee injury and [the employee’s] back pain.... Accordingly, the court finds, and the record reflects, that the effects of [the employee’s] right-knee injury interfered with the efficiency of his lower back.”
Alabama caselaw recognizes that medical causation may be established by circumstantial. evidence proving that a work-related injury has aggravated an employee’s preexisting condition. See, e.g., Georgia-Pacific Corp. v. Medley, 621 So.2d 306 (Ala.Civ.App.1993). For example, if an injury to an employee’s lower éxtremity causes a change in his or her gait that produces strain on the lower back and causes an increase in the employee’s preexisting back pain, a trial court could rely on that evidence to find that the injury to the lower extremity extends to other parts of the employee’s body. See Boise Cascade Corp. v. Jackson, 997 So.2d at 1047. However, in this ease, the employee did not present' any evidence indicating that the symptoms of his back injury had worsened to any degree due to his right-knee injury. In fact, the employee testified that his back was “okay” and that he had informed his vocational expert that his continuing occasional lower back pain was not related to his right-knee injury, which statement the vocational expert confirmed. The employee testified that he now uses Lortab, a prescription narcotic pain medication, but only for the pain in his right knee. It is true that the employee can no longer work as an automobile technician for the employer, but.the undisputed evidence shows that it is due to the permanent light-duty work restrictions assigned by Dr. Kissel because of the employee’s right-knee injury, not because of any alleged aggravation of the employee’s preexisting back problem.
Although the employee was questioned at length, at no point did the employee testify that his right-knee injury had caused or contributed to any problems with any other part of his body. To the contrary, the employee confirmed his previous deposition testimony indicating that he did not have problems in his left, knee, upper extremities, lumbar spine, or with headaches. The employee’s wife testified that the employee would experience occasional back. pain “if he lifts something wrong.” That testimony does not establish that the employee aggravated his lower back problem due to his right-knee injury. None of the other witnesses testified to any facts that could reasonably imply that the employee’s right-knee injury affected any other parts of the employee’s body.
In the amended judgment, the trial court further relied on its own observations of the employee, - stating as follows:
“Throughout the trial, the Court observed that [the employee] was very careful, deliberate and unsteady in the manner in which he would ambulate around the courtroom — utilizing various furniture to steady himself as he walked. In order to maintain his balance, [the employee] would shift. and carry his . weight in such a manner that seemed to place additional strain on his lower back. [The employee] testified that he can no longer participate in recreational activi *1155 ties that involve a significant amount of motion because of this misalignment and resulting pain. For instance, [the employee] testified that he could no longer walk through a Wal-Mart store or exercise with his wife. In addition, [the employee’s] ability to complete yard work and perform other household chores has been, greatly diminished. It appeared to this Court that the change in [the employee’s] gait, decreased range of motion, and his instability when walking (coupled with Dr. Kissel’s testimony that [the employee’s] right-knee injury affects his body as a whole) indicate the injury to his right knee interferés with the efficiency of other parts of his body such as the back, hips, and," leg.”
Our caselaw does state that a trial court may consider its own observations when determining the extent of the disability of an employee. See, e.g., Wolfe v. Dunlop Tire Corp., 660 So.2d 1345 (Ala. Civ.App.1995). Certainly, during trial, a trial court may determine from the way an employee ambulates whether hié or her subjective complaints of pain and dysfunction in the affected lower extremity are credible, see, e.g., Mobile Airport Auth. v. Etheredge, 94 So.3d 397, 407-08, (Ala.Civ. App.2012), and whether those complaints should be factored into the determination of the extent of the employee’s physical disability. See, e.g., Stericycle, Inc. v. Patterson, 161 So.3d 1170 (Ala.Civ.App.2013), writ denied, 161 So.3d 1186 (Ala.2014). In an appropriate case, it appears that a trial court could also use its own observations of an employee’s gait and the overall condition of his or her body, to verify the employee’s testimony that the pain, swelling, instability, and sleeplessness resulting from an injured extremity affects his or her body as a whole. See Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968), overruled on other grounds, Ex parte Drum-mond Co., supra; see also Ex parte Hayes, 70 So.3d 1211 (Ala.2011). However, we have not located any caselaw holding that a trial court may premise a finding of medical causation solely on its own observations of an employee without any further supporting evidence, much less make a finding disputed by the other evidence in the record,
Notably, the employee testifíéd that" he had been limping due to- his 1978. back injury, and one of the witnesses for the employer described the employee’s limping as being unchanged after the accident. ‘ The trial court found that the way that the employee walked “seemed” to be placing “additional strain” on the employee’s lower back, but the trial court did not receive any evidence from the employee to verify that suspicion. We also find that the employee did not, in his testimony, attribute his reduced recreational activities to any “misalignment,” as the trial court found.- Most pointedly, the only direct testimony from the employee on the subject contradicted the factual findings of the trial court, because the employee’s testimony indicated that his right-knee injury did not cause or. contribute to his lower back problem. Although a trial court is vested with broad discretion in deciding medical causation, see Ex parte Price, supra, a trial court may not rest a finding on speculation or conjecture, even if arising from its observations, that contradicts the positive evidence in the record. See Wix Corp. v. Davis, 945 So.2d 1040 (Ala.Civ. App.2005). Under the facts of this case, the trial court’s observations do not amount to substantial evidence indicating that the employee’s right-knee injury extends to his lower back.
In his brief, the employee argues that this court should reconsider that part of' our opinion in Goodyear Tire & Rubber Company v. Bush, supra, holding that evidence of vocational disability cannot be used to circumvent the schedule. In Ex parte Drummond, supra, our supreme *1156 court specifically overruled a line of cases from this court that had used “vocational disabilities” as a basis-for taking an injury outside the schedule. 837 So.2d at 834 n. 8 and accompanying text. In Advantage Sales of Alabama, Inc. v. Clemons, 36 So.3d 517 (Ala.Civ.App.2008), and Gold Kist, Inc. v. Porter, 35 So.3d 608 (Ala.Civ. App.2008), this court followed Ex parte Drummond in holding that a trial court cannot consider evidence of vocational disability as a factor in determining the exclusivity of the schedule. Our opinion in Bush only reiterated established caselaw on this point. Hence, we conclude that we correctly decided Bush and, thus, that the judgment of the trial court cannot be affirmed based on the evidence of the vocational effects of the employee’s right-knee injury.
The findings of fact in the amended judgment are not supported by substantial evidence. Thus, the trial court erred in determining that the injury to the employee’s right knee extended to and interfered with the efficiency of other parts- of the employee’s body so as to render the schedule nonexclusive. As a matter of law, the employee is entitled solely to permanent-partial-disability benefits for the partial loss of use of his right leg under § 25-5-57(a)(3)d. Therefore, we again remand the case to the trial court for it to determine the compensation owed to the employee by applying the formula set out in § 25-5-57(a)(4)d. based on the evidence contained in the record.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.