*1213
 
 MURDOCK, Justice.
 

 Thomas Hayes sued his employer, Vintage Pharmaceuticals, LLC (“Vintage”), seeking workers’ compensation benefits after he suffered an injury to his foot. Following a trial at which evidence was presented ore tenus, the court found that Hayes had suffered a nonscheduled injury to the body as a whole and awarded Hayes permanent total-disability benefits for a nonscheduled injury. On appeal, the Court of Civil Appeals reversed the judgment, based on that court’s holding that Hayes’s injury should be compensated under Ala.Code 1975, § 25-5-57(a)(3)a., as an injury to a scheduled member.
 

 This Court issued the writ of certiorari to review whether the decision of the Court of Civil Appeals conflicts with this Court’s prior decisions in
 
 Exparte Drummond Co.,
 
 837 So.2d 831 (Ala.2002), and
 
 Ex parte Jackson,
 
 997 So.2d 1038 (Ala.2008), among other cases.
 

 I. Facts and Decisions Below
 

 Hayes worked for Vintage as a custodian. In July 2005, Hayes sustained an open fracture of his right calcaneus, or heel bone, in a forklift accident at work. The accident severed a portion of Hayes’s calcaneus, which was surgically reattached by an orthopaedic surgeon. Soon after the surgery to reattach the calcaneus, Hayes developed an infection in his right foot that required multiple irrigation and debridement procedures and additional surgeries to reconstruct the foot. Among other things, the injury to Hayes’s right foot left him unable to accommodate for his left foot, which suffers from congenital defects and the effects of surgery he underwent as a child.
 

 The trial court held a bench trial, at which it heard testimony from Hayes and Hayes’s vocational evaluator. The trial court also received documentary evidence, including the deposition testimony of Hayes’s treating physician, medical records, and the written report of Hayes’s vocational evaluation.
 

 In its judgment, the trial court noted that it had observed the various witnesses, including Hayes, as well as considered all the testimony and other evidence at trial, and it concluded that the effect of Hayes’s physical injury to his right foot extended beyond that scheduled member. Based on its review of this Court’s decision in
 
 Drummond,
 
 the trial court concluded that Hayes was entitled to compensation outside the schedule set out at § 25-5-57(a)(3)a., Ala.Code 1975 (“the schedule”).
 

 Having determined that Hayes’s injury was compensable outside the schedule, the trial court turned its attention to the vocational-disability evidence in an effort to determine whether Hayes’s injury entitled him to a finding of permanent total disability, or something less. Among other things, the trial court noted that Hayes was limited to standing and walking a maximum of one hour during each eight-hour workday and that he had been advised to use a walker during this one-hour period. The trial court also noted that a functional-capacity evaluator had stated that Hayes’s “left lower extremity weakness and deformity are congenital^] however, because of these deficits, the loss of the right lower extremity function has a greater impact upon this patient’s ability to stand, walk and perform functional activities.” The trial court observed that Hayes had been able to perform all aspects of his custodial work with Vintage before his injury but has been unable to return to work since that time. The trial court found that Hayes suffered from per
 
 *1214
 
 manent total disability based in part upon the vocational expert’s testimony, which the trial court described, in part, as follows:
 

 “Upon consideration of these factors, along with his age, ‘severely altered gait/ use of an assistive device for ambulation/obvious appearance of having a substantial physical disability,’ and other negative employability factors, vocational expert [John] McKinney opined that Mr. Hayes is 100% vocationally disabled. McKinney also testified that the necessity of elevating one’s feet at waist level or above precluded all work activity. Further, the necessity of holding a cane while walking or standing is a significant vocational restriction.”
 
 [1]
 

 Vintage appealed to the Court of Civil Appeals. On appeal, the Court of Civil Appeals addressed the issue whether Hayes’s injury should be compensated outside the schedule.
 
 [2]
 

 Vintage Pharmaceuticals, LLC v. Hayes,
 
 70 So.3d 1203 (Ala.Civ.App.2007). The Court of Civil Appeals determined that the trial court’s conclusion that Hayes was entitled to compensation outside the schedule was in conflict with this Court’s holding in
 
 Drummond
 
 and its own decision in
 
 Boise Cascade Corp. v. Jackson,
 
 997 So.2d 1026 (Ala.Civ.App. 2007), interpreting the decision in
 
 Drum-mond.
 
 The Court of Civil Appeals reasoned as follows:
 

 “In its judgment, the trial court concluded that Hayes’s ‘right foot injury extends to the other parts of his body, and interferes with their efficiency, by affecting his balance and stability, requiring him to use a cane or walker when walking, and necessitating foot elevation throughout the day.’ Essentially, the trial court awarded compensation to Hayes outside the schedule because, the court concluded, Hayes’s right-foot injury affected his body generally. However, to receive compensation outside the schedule, Hayes had to show that his injury to a scheduled member extended to a nonscheduled part of his body and interfered with its efficiency.
 
 [Ex parte Drummond Co.,]
 
 837 So.2d [831,] at 834 [ (Ala.2002) ].
 
 Hayes has not established that his right-foot injury caused an injury to any particular nonscheduled part of his body. See Boise Cascade Corp. v. Jackson,
 
 997 So.2d 1026 (Ala.Civ.App.2007) (stating that an employee who sustained a foot injury may not recover nonscheduled disability benefits on the basis of complaints of back pain
 
 in the absence of a showing that the injury to his foot caused a permanent physical injury to his back).
 
 Accordingly, the trial court erred by treating Hayes’s injury as a nonscheduled injury to the body as a whole rather than as a scheduled injury pursuant to § 25-5-57(a)(3).
 

 “We note also that the trial court’s finding that Hayes must ‘sit or lie frequently throughout the day with his foot
 
 *1215
 
 elevated ... to prevent or alleviate pain and swelling’ does not support the trial court’s determination of a nonscheduled injury. In
 
 Ex parte Drummond Co.,
 
 the employee stated that he had to elevate his injured knee at night to reduce the swelling. 837 So.2d at 836. The employee argued that ‘ “[t]he simple fact that he has to elevate his knee and take precautions for the swelling meets the criteria [for taking an injury off the schedule] set out in the caselaw of the State of Alabama.” ’
 
 Id.
 
 (quoting the employee’s brief). However, the court in
 
 Ex parte Drummond Co.
 
 concluded that, despite the need to elevate the knee, the occasional swelling of the employee’s knee did not qualify as an injury that extended to other parts of the body and produced a greater incapacity than would otherwise result from the injury. 837 So.2d at 836.”
 

 70 So.3d at 1205-06 (emphasis added).
 

 II. Standard of Review
 

 The standard of appellate review in workers’ compensation eases is governed by § 25-5-81(e), Ala.Code 1975, which provides that, “[i]n reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.” “Substantial evidence” is ‘“evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ”
 
 Ex parte Trinity Indus., Inc.,
 
 680 So.2d 262, 268 (Ala.1996) (quoting
 
 West v. Founders Life Assurance Co.,
 
 547 So.2d 870, 871 (Ala.1989)).
 

 When evidence is presented ore tenus, it is the duty of the trial court, which had the opportunity to observe the witnesses and their demeanors, and not the appellate court, to make credibility determinations and to weigh the evidence presented.
 
 Blackman v. Gray Rider Truck Lines, Inc.,
 
 716 So.2d 698, 700 (Ala. Civ.App.1998). The role of the appellate court is not to reweigh the evidence but to affirm the judgment of the trial court if its findings are reasonably supported by the evidence and the correct legal conclusions have been drawn therefrom.
 
 Ex parte Trinity Indus.,
 
 680 So.2d at 268-69;
 
 Fryfogle v. Springhill Mem’l Hosp., Inc.,
 
 742 So.2d 1255 (Ala.Civ.App.1998), aff'd, 742 So.2d 1258 (Ala.1999). The “appellate court must view the facts in the light most favorable to the findings of the trial court.”
 
 Ex parte Professional Bus. Owners Ass’n Workers’ Comp. Fund,
 
 867 So.2d 1099, 1102 (Ala.2003). “The legal conclusions of the trial court in a workers’ compensation case are reviewed de novo on appeal.”
 
 Ex parte Morris,
 
 999 So.2d 932, 936 (Ala.2008); see also
 
 Ex parte American Color Graphics, Inc.,
 
 838 So.2d 385, 387-88 (Ala.2002).
 

 III. Analysis
 

 Section 25-5-57, Ala.Code 1975, governs compensation for injuries compensable under the Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975. Section 25-5-57(a)(3)a. provides, in part:
 

 “In cases included in the following schedule, the compensation shall be 66 2/3 percent of the average weekly earnings, during the number of weeks set out in the following schedule:
 

 [[Image here]]
 

 “14. For the loss of a foot, 139 weeks.
 

 [[Image here]]
 

 “16. For the loss of a leg, 200 weeks.
 

 
 *1216
 
 [[Image here]]
 

 “26. For the loss of two legs, 400 weeks.
 

 “27. For the loss of two feet, 400 weeks.
 

 [[Image here]]
 

 Section 25-5-57(a)(3)d., Ala.Code 1975, states:
 

 “d. Loss of Use of Member. The permanent and total loss of the use of a member shall be considered as equivalent to the loss of that member, but in such cases the compensation specified in the schedule for such injury shall be in lieu of all other compensation, except as otherwise provided herein. For permanent disability due to injury to a member resulting in less than total loss of use of the member not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member which the extent of the injury to the member bears to its total loss.”
 

 In
 
 Bell v. Driskill,
 
 282 Ala. 640, 213 So.2d 806 (1968), this Court established an exception that removes certain injuries from the schedule. In
 
 Ex parte Drummond Co.,
 
 837 So.2d 831 (Ala.2002), this Court reexamined the test for determining when an injury to a scheduled member should be treated as an unscheduled injury to the body as a whole:
 

 “[I]t was the intention of this Court in adopting in
 
 Bell
 
 the exception to the workers’ compensation schedule to address those instances where the injury to a scheduled member caused
 
 such impairment to the body as a whole that the benefits reflected on the schedule were not appropriate.
 
 Specifically, the
 
 Bell
 
 test permitted an injury to a scheduled member to be compensated outside the schedule
 
 if the effect of the injury extends to other parts of the body and produces a greater or more prolonged incapacity than that which naturally results from the injury to the specific member.”
 

 Drummond,
 
 837 So.2d at 834 (emphasis on “and” original; other emphasis added). This Court then expressly “renew[ed] [its] commitment to the policy that underlay the
 
 Bell
 
 test,” choosing to express that policy in the language used in 4 Lex K. Larson,
 
 Larson’s Workers’ Compensation Law
 
 § 87.02 (2001):
 

 “ ‘The great majority of modern decisions agree that, if
 
 the effects of the loss
 
 of the member extend to other parts of the body and
 
 interfere with their efficiency,
 
 the schedule allowance for the lost member is not exclusive.’
 

 “(Footnote omitted.) This language remains unchanged from the edition of the Larson treatise on which this Court relied in
 
 Bell.
 
 Because of the confusion that has developed surrounding the
 
 Bell
 
 test, we today adopt the language recited above from Larson,
 
 Workers’ Compensation Law
 
 § 87.02, as the test for determining whether an injury to a scheduled member should be treated as unscheduled; therefore, we overrule
 
 Bell
 
 insofar as it established a different test....”
 

 Drummond,
 
 837 So.2d at 834-35 (emphasis added; footnote omitted).
 

 The first of the two grounds given by the Court of Civil Appeals for reversing the judgment of the trial court is that “Hayes has not established that his right-
 
 *1217
 
 foot injury caused an injury to any particular nonscheduled part of his body.” 70 So.3d at 1206. In support of this rationale, the court cites its decision in
 
 Boise Cascade Corp. v. Jackson,
 
 997 So.2d 1026, 1036 (Ala.Civ.App.2007), which it describes as holding that “an employee who sustained a foot injury may not recover nonscheduled disability benefits on the basis of complaints of back pain in the absence of a showing that the injury to his foot caused a permanent physical injury to his back.” 70 So.3d at 1206. Citing
 
 Ex parte Jackson,
 
 997 So.2d 1038 (Ala.2007), this Court’s decision reversing the Court of Civil Appeals’ judgment in
 
 Boise Cascade Corp. v.
 
 Jackson,
 
 [3]
 
 Hayes argues that the Court of Civil Appeals erred in requiring him to prove a physical injury to a particular nonscheduled part of his body. We agree.
 

 This Court explained in
 
 Jackson:
 

 “In
 
 Drummond,
 
 this Court adopted the following test: ‘ “[I]f the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.’” 837 So.2d at 834 (quoting 4 Lex K. Larson,
 
 Larson’s Workers’ Compensation Law
 
 § 87.02 (2001)). This test clearly does not require damage to the physical structure of other parts of the body in order to take an injury out of the schedule.”
 

 997 So.2d at 1039. As the Court of Civil Appeals recognized in its opinion on remand from this Court’s decision in
 
 Jackson:
 

 “Based on the holding in
 
 Ex parte Jackson, supra,
 
 in order to prove that the effects of the injury to the scheduled member ‘extend to other parts of the body and interfere with their efficiency,’ the employee does not have to prove that the effects actually cause a permanent physical injury to nonscheduled parts of the body. Rather, the employee must prove that the injury to the scheduled member causes pain or other symptoms that render the nonscheduled parts of the body less efficient.”
 

 Boise Cascade Corp. v. Jackson,
 
 997 So.2d 1042, 1044 (Ala.Civ.App.2008). We also note with approval the subsequent explanation by the Court of Civil Appeals in
 
 Child Day Care Ass’n v. Christesen,
 
 47 So.3d 249 (Ala.Civ.App.2008):
 

 “In
 
 Ex parte Drummond Co.,
 
 837 So.2d 831, 834 (Ala.2002), our supreme court restated the test for determining when an injury to a scheduled member may be treated as a nonscheduled injury to the body as a whole: ‘ “[I]f the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.” ’ (Quoting 4 Lex K. Larson,
 
 Larson’s Workers’ Compensation Law
 
 § 87.02 (2001).) ‘To “interfere” means “to interpose in a way that hinders or impedes.”
 
 See Merriam-Webster’s Collegiate Dictionary
 
 652 (11th ed. 2003). “Efficiency” refers to effective functioning.
 
 Id.
 
 at 397.’
 
 Boise Cascade Corp. v. Jackson,
 
 997 So.2d 1042, 1045 (Ala.Civ.App.2008).”
 

 47 So.3d at 251.
 

 We leave until later in this opinion a more detailed description of the injury suf
 
 *1218
 
 fered by Hayes and the manner in which it impedes the effective functioning of the remainder of his body. Insofar as the first ground relied upon by the Court of Civil Appeals, it is sufficient at this juncture to note that that court erred in requiring a showing of physical injury to a particular nonscheduled part of the body.
 

 As a second basis for its decision, the Court of Civil Appeals relied upon a comparison of the facts in this case with those in
 
 Drummond.
 
 The Court of Civil Appeals specifically noted that the fact that the employee in
 
 Drummond
 
 “had to elevate his injured knee at night” made that ease comparable to this one:
 

 “We note also that the trial court’s finding that Hayes must ‘sit or lie frequently throughout the day with his foot elevated ... to prevent or alleviate pain and swelling’ does not support the trial court’s determination of a nonscheduled injury. In
 
 Ex parte Drummond Co.,
 
 the employee stated that had to elevate his injured knee at night to reduce the swelling. 837 So.2d at 836. The employee argued that ‘ “[t]he simple fact that he has to elevate his knee and take precautions for the swelling meets the criteria [for taking an injury off the schedule] set out in the caselaw of the State of Alabama.” ’
 
 Id.
 
 (quoting the employee’s brief). However, the court in
 
 Ex parte Drummond Co.
 
 concluded that, despite the need to elevate the knee, the occasional swelling of the employee’s knee did not qualify as an injury that extended to other parts of the body and produced a greater incapacity than would otherwise result from the injury. 837 So.2d at 836.”
 

 70 So.3d at 1206. The Court of Civil Appeals reasoned that, because this Court determined in
 
 Drummond
 
 that the effects of the employee’s injury did not warrant an award of compensation outside the schedule, the same should be true in the present case.
 

 As this Court explained in
 
 Drummond,
 
 however, that was a case in which the plaintiff testified “that his knee occasionally swelled, but that the swelling did not occur on a daily basis.” 837 So.2d at 836. As this Court further noted, the plaintiff in
 
 Drummond
 
 testified that “he took ibuprofen or naprosyn when his knee swelled, but that he did not take anything stronger for the pain.”
 
 Id.
 
 We also noted that the treating physician had assigned the plaintiff “an impairment rating of 1% to the whole body, based on the fact that [the plaintiff] had no loss of range of motion in his knee.”
 
 Id.
 
 Also of significance was the fact that, following surgery on his knee, the plaintiff in
 
 Drummond
 
 “returned to work as a belt patrolman, and he continued to work at that position until he was laid off’ almost a year later.
 
 Id.
 
 Insofar as the pain experienced by the plaintiff, we observed that
 

 “[t]his case does not present a situation in which the pain, although isolated to the scheduled member, causes a disability to the body as a whole. We recognize that pain can be totally, or virtually totally, debilitating, but this case does not present such a situation....”
 

 Drummond,
 
 837 So.2d at 836 n. 11. Although the plaintiff in
 
 Drummond
 
 testified that he is “unable to participate in normal activities,” 837 So.2d at 836, this Court noted that the fact that he sometimes had to elevate his knee at night to reduce the swelling and take related precautions did not constitute an interference with the efficiency of other parts of the body so as to warrant compensation outside the schedule
 
 *1219
 
 for the partial or full loss of use of a leg. See Ala.Code 1975, § 25-5-57(a)(3)a.l6 and § 25-5-57(a)(3)d.
 

 The facts of the present case contrast markedly with those in
 
 Drummond.
 
 The trial court made the following findings of fact, which, from our review of the record, appear to be supported by substantial evidence:
 

 “The court observed Hayes in the open courtroom, walking to and from, and while on the witness stand. The court observed firsthand Hayes’s injured right foot, and the calf-height soft boot Hayes testified that he wears when he will be on his feet for any length of time. The court also observed the hard left foot brace worn by Hayes to support his congenitally defective left foot. The court further observed Hayes’s demean- or.
 

 “The court has considered all the evidence. Based on its consideration of the evidence, and observation of the witnesses, the court finds as follows:
 

 “Plaintiff Thomas Hayes is age 52, born January 18, 1954, and is a former employee of Defendant Vintage Pharmaceuticals, LLC. He was employed as a custodian. His duties included overall cleaning, including cleaning, buffing and mopping the floors and other janitorial work. His job required him to be able to use both hands. On July 13, 2005, Hayes was exiting a janitor’s closet when the door was struck from the opposite side by a forklift, suddenly and without warning. As a result, Hayes suffered a crush injury to his right rear foot from either the door or the forklift. He was taken to Huntsville Hospital by ambulance where he was seen and treated.
 

 “The accident fractured and sheared off the calcaneal tuberosity on the plantar aspect of the right foot. The calca-neal fracture was pinned on July 13, 2005, at Huntsville Hospital by orthopedic surgeon Mark Leberte, M.D. Subsequently, Hayes developed infection with skin loss, and was admitted for irrigation and debridement of the right heel on July 29, 2005. On August 12, 2005, a repeat debridement of necrotic tissue was performed by Dr. Leberte. Infectious disease specialist Dr. Leroy Harris consulted, as did plastic surgeon Michael Yates, M.D. Dr. Yates later performed a reconstruction procedure grafting muscle and tissue from Mr. Hayes’s back to form a new right heel and back of foot. After a period of healing, Hayes was referred to physical therapy to help with his difficulties with gait.
 

 “Hayes’s work-related right foot injury has left his right foot with severe limitations, including range of motion, affecting his ability to walk. Hayes also experiences a lack of feeling in his right foot, particularly on the bottom of his foot, also affecting his ability to walk. Additionally, he has shooting pains on the front top of his right foot. [Hayes’s physician] ordered a boot for his right foot, and a brace for his left foot, both of which Hayes wore in open court. [Hayes’s physician] assigned ‘a 17% foot impairment [which equates to a] 12% lower extremity impairment and [a] 5% whole person impairment.’
 

 “Hayes also has a congenital defect to his left foot. Surgery was performed on his left foot as a child, but it left him with a left foot which turned slightly inward at the toes and rolling to the outside. He walks with a limp, but his left foot never prevented him from working. Before this injury, Hayes had been able to accommodate his left foot
 
 *1220
 
 defect with a normal right foot, which gave him the stability necessary for balance. The right foot injury, with resultant limited range of motion, and lack of feeling, has taken away Hayes’s stability and balance when on his feet. His lack of stability and balance has caused him to fall frequently, so he must use a cane or walker at all times when walking to avoid falling. He uses his right hand to hold a cane and is right-hand dominant.
 

 “Hayes has an almost total lack of control of his right foot if he does not wear a shoe or special boot. Because of this, if he awakens during the night to go the bathroom, he simply crawls on all fours rather than putting on a shoe or boot. Hayes has difficulty being on his feet more than one hour per day.
 
 He finds it necessary to sit or lie frequently throughout the day with his foot elevated at waist level or above to prevent or alleviate pain and
 
 swelling.”
 
 [4]
 

 (Emphasis added.)
 

 The trial court thereafter concluded as follows:
 

 “Hayes’s right foot injury extends to the other parts of his body, and interferes with their efficiency,
 
 by affecting his balance and stability, requiring him to use a cane or walker when walking, and necessitating foot elevation throughout the day.
 
 Pursuant to the language reaffirmed in
 
 Ex Parte Drummond Company, Inc.,
 
 837 So.2d 831 (Ala.2002), this court concludes that Hayes’s injury is not limited to the schedule.”
 
 [5]
 

 (Emphasis added.)
 

 Based on the foregoing, we conclude that the Court of Civil Appeals erred in
 
 *1221
 
 reversing the judgment of the trial court based on its holding that Hayes was not entitled to compensation outside the schedule. The record in this case contains substantial evidence to support the trial court’s finding and conclusion that the effects of the injury to Hayes’s right foot extend to and interfere with the effective functioning of the remainder of his body in a manner that satisfies the rule announced in
 
 Drummond.
 

 Based on the foregoing, we pretermit the other arguments made by Hayes in his brief to this Court.
 

 IV. Conclusion
 

 The judgment of the Court of Civil Appeals is due to be reversed and this cause remanded to that court for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and WOODALL, STUART, BOLIN, PARKER, SHAW, MAIN, and WISE, JJ., concur.
 

 [1]
 

 . The trial court also noted that Hayes had been found disabled by the Social Security Administration for purposes of Social Security disability-insurance benefits.
 

 [2]
 

 . On appeal to the Court of Civil Appeals, Vintage challenged the trial court’s conclusions that Hayes was entitled to compensation outside the schedule and that his compensation should be based upon a finding of permanent total disability. Because the Court of Civil Appeals disposed of the case by holding that Hayes was not entitled to compensation outside the schedule, that court did not address the issue whether Hayes should be compensated for permanent total disability if he is not to be compensated under the schedule, nor did it address the vocational evidence relied upon by the trial court as it pertains to that issue.
 

 [3]
 

 . When the Court of Civil Appeals issued its opinion in this case on September 24, 2007, this Court had not yet issued its opinion reversing the Court of Civil Appeals' decision in
 
 Boise Cascade. Ex parte Jackson
 
 was released on November 16, 2007.
 

 [4]
 

 . Presumably, Hayes could accommodate this difficulty in standing and "being on his feet more than one hour per day” by simply not standing. If so, then arguably he would be no worse off than if he had lost entirely the use of both of his legs, a loss that generally would be compensable under the schedule. See generally
 
 Shoney's, Inc. v. Rigsby,
 
 971 So.2d 722, 725-27 (Ala.Civ.App.2007) (noting that § 25-5-57(a)(3)d. makes the complete loss of use of a member equivalent for compensation purposes to the outright loss of the member and stating, in light of that provision, that "[t]he question becomes whether the pain associated with the lost member, or with a permanently injured member even when the worker avoids the use of that member to the extent that he or she reasonably can do so, ... extends to other parts of the body and interferes with their efficiency”). We need not address this possibility, however, in light of the fact that it is necessary for Hayes to "sit or lie frequently throughout the day with his foot elevated at waist level or above," a fact that interferes with the efficient functioning of the remainder or his body in a manner that goes beyond the interference that generally would be true simply from the loss of use of his legs.
 

 [5]
 

 . The facts of the present case are more akin to those of
 
 Bell
 
 than of
 
 Drummond.
 
 In
 
 Bell,
 
 this Court upheld an award of compensation for a 90% permanent disability based on the following findings by the trial court:
 

 " 'At [the time of the hearing, four years after the injury, the worker] was still suffering from the injury. When he worked his knee would swell, particularly at night, and would be so painful that he could not sleep. His wife would be up much of the night massaging his leg and keeping a hot pad on it. His nervous system was affected, as evidenced by his emotional breakdown during the hearing; he carried a bottle of aspirin tablets with him at all times, which sometimes relieved his pain and sometimes did not; he would suffer pain at times from periods extending from two hours to a day or two; [a] 15 pound brace absorbed plaintiff’s energy, but the energy loss was of less importance than the pain he would suffer without the brace; when he was not working he kept his leg elevated to prevent swelling; he had lost his stability.' "
 

 282 Ala. at 644, 213 So.2d at 809.