DONALDSON, Judge.
American Cast Iron Pipe Company (“ACIPCO”) appeals from a judgment of the Jefferson Circuit Court (“the trial court”) awarding Sharon Blackmon permanent-partial-disability benefits pursuant to the Alabama Workers’ Compensation Act (“the Act”), Ala.Code 1975, § 25-5-1 et seq. Blackmon cross-appeals, arguing that the trial court erred by denying her requests for the award of additional costs of litigation against ACIPCO. Because we hold, among other things, that the award of permanent-partial-disability benefits exceeds the amount of benefits authorized under the Act, we reverse the trial court’s judgment as to the issues raised in ACIP-CO’s appeal. We affirm the judgment as to the issue raised in Blackmon’s cross-appeal.

Facts and Procedural History

The following facts were found by the trial court in its judgment entered on November 1, 2012, based upon stipulations by the parties and ore tenus testimony presented at trial. Blackmon began working for ACIPCO in February 1999. She continued in that employment until her employment was terminated by ACIPCO in March 2010. At the time of the injuries that gave rise to this matter, Blackmon was a pipe processor. Following her injuries, Blackmon’s employment was terminated because ACIPCO was unable to accommodate her physical limitations and restrictions. Blackmon filed suit against ACIPCO seeking benefits under the Act. The parties stipulated that venue, jurisdiction, and subject matter were proper and that Blackmon had sustained an injury to her right wrist on or about September 3, 2008, and to her right ankle on or about January 5, 2010, while performing work within the line and scope of her employment. The parties stipulated to the average weekly wage applicable to each injury. The parties stipulated that Dr. Shane Buggay, the authorized treating physician for Blackmon’s wrist injury, initially placed Blackmon at maximum medical improvement (“MMI”) for that injury on April 2, 2009, at which time he found that she had “no residual impairment” to her *363 wrist and released her to return for treatment as needed. Blackmon returned to Dr. Buggay in June 2009 with further complaints of worsened symptoms and tenderness over the base of her thumb. Dr. Buggay provided further treatment for the injury and ultimately placed Black-mon at MMI again on January 6, 2010, at which time he gave Blackmon a permanent restriction of no forceful gripping against her thumb as a post. The parties stipulated that Dr. Richard Meyer placed Blackmon at MMI for her ankle injury on July 19, 2010, at which time he assigned her 0% permanent partial impairment. Dr. Meyer reconfirmed that rating on October 28, 2010, in a report stating: “There is certainly no measurable impairment by the book but likewise there is nothing that we are going to do that is going to change our situation now.” Dr. Meyer further stated: “I think standing on her feet all day at a hair salon would probably aggravate any degree of discomfort that she had from her previous injury.”[1] The parties stipulated that Dr. James Floyd, who is not a treating physician authorized by ACIPCO, performed an orthoscopic examination of Blackmon’s right ankle but did not assign a disability rating for her ankle injury.
The parties tried the case to the trial court on June 5, 2012. When asked whether the injury to her wrist caused problems to other parts of her body, Blackmon testified that, “if I go so long without seeing the doctor or can’t go to the doctor, eventually it will get in the top part of my arm,” but she denied that her wrist injury affected her shoulder or any other part of her body. Blackmon testified as follows regarding her ankle:
“It still swells, swelling at the end of the day, and like I say, just — just standing up in general for a long period of time, I’ll say at least three, three hours and a half at the most just constantly standing without me taking a break or nothing like that, it starts to ache.”
Blackmon testified that, although her ankle injury kept her from going outside to play with her grandchildren, her injury did not prevent her from taking care of herself.
Following trial, the trial court granted Blackmon’s request to leave testimony open for the sole purpose of receiving testimony from Blackmon’s vocational-rehabilitation expert, John Long. Long testified that, “based upon [Blackmon’s] inability to sustain her work at ACIPCO and the tremendous wage loss she would have, it would by my — or there’s some different wage loss would be — her vocational disability would be 30 to 35 percent.”
On November 1, 2012, the trial court entered a judgment containing detailed findings of fact and conclusions of law. The trial court found that Blackmon had “suffered [a] 35% permanent partial disability as a result of her work-related injuries” and calculated Blackmon’s benefit award under the Act based upon the 300-week amount specified for permanent partial nonscheduled disability benefits. See § 25-5-57(a)(3)g, Ala.Code 1975. The trial court ordered ACIPCO to approve Dr. Buggay “as the treating physician for [Blackmon’s] right ankle injury.” The trial court taxed the filing fee against ACIP-CO and left all other costs taxed as prepaid. Both parties filed motions to alter, amend, or vacate portions of the judgment, and the trial court entered an order on February 27, 2013, denying those motions. *364 ACIPCO filed a timely appeal, and Black-mon filed a timely cross-appeal.
On appeal, ACIPCO contends that the trial court erred (1) by awarding Blackmon benefits to the body as a whole; (2) by admitting evidence from Blackmon’s vocational-rehabilitation expert witness; and (3) by ordering ACIPCO to authorize a physician to treat Blackmon’s ankle injury other than the physician already authorized by ACIPCO for that treatment. On cross-appeal, Blackmon argues that the trial court erred by denying her motion to tax additional costs against ACIPCO.

Standard of Review

“The standard of appellate review in workers’ compensation cases is governed by § 25-5-81(e), Ala.Code 1975, which provides:
“ ‘(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
“ ‘(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.’
“Substantial evidence is “ ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). Additionally, a trial court’s findings of fact on conflicting evidence are conclusive if they are supported by substantial evidence. Edwards v. Jesse Stutts, Inc., 655 So.2d 1012 (Ala.Civ.App.1995). ‘This court’s role is not to reweigh the evidence, but to affirm the judgment of the trial court if its findings are supported by substantial evidence and, if so, if the correct legal conclusions are drawn therefrom.’ Bostrom Seating, Inc. v. Adderhold, 852 So.2d 784, 794 (Ala.Civ.App.2002).”
Denmark v. Industrial Mfg. Specialists, Inc., 98 So.Sd 541, 543-44 (Ala.Civ.App.2012).

Discussion

ACIPCO first contends that the trial court erred in awarding Blackmon benefits calculated based on an injury to her body as a whole rather than scheduled injuries to her wrist and ankle. ACIPCO argues that Blackmon’s two separate injuries to her wrist and her ankle are both compensable, under the schedule of benefits in the Act, at a maximum of 170 weeks for the wrist and 139 weeks for the ankle. See § 25-5-57(a)(3)a.l2, a.14, and a.15, Ala.Code 1975. ACIPCO argues that Blackmon failed to present evidence indicating that the effects of her injuries extended to other parts of her body or that her injuries virtually totally disabled her. Specifically, ACIPCO argues that, pursuant to the standard announced in Ex parte Drummond, 837 So.2d 831, 834-36 (Ala.2002), and Ex parte Hayes, 70 So.3d 1211, 1219-21 (Ala.2011), the trial court did not have sufficient evidence before it to support awarding benefits beyond the scheduled injuries to Blackmon’s ankle and wrist — i.e., the evidence was insufficient to support an award of benefits based on a finding of a 35% permanent partial disability to Blackmon’s body as a whole. This court has recently stated:
“In Ex parte Hayes, 70 So.3d 1211, 1217 (Ala.2011), our supreme court discussed the test for determining whether an injury to a scheduled member, such as a leg, should be treated as an unscheduled injury to the body as a whole:
“ ‘ “In [Ex parte ] Drummond [Co., 837 So.2d 831 (Ala.2002)], this *365 Court adopted the following test: ‘ “[I]f the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.” ’ 837 So.2d at 834 (quoting 4 Lex K. Larson,. Larson’s Workers’ Compensation Law § 87.02 (2001)). This test clearly does not require damage to the physical structure of other parts of the body in order to take an injury out of the schedule.”
“ ‘[Ex parte Jackson,] 997 So.2d [1038] at 1039 [ (Ala.2007) ]. As the Court of Civil Appeals recognized in its opinion on remand from this Court’s decision in Jackson:
“ ‘ “Based on the holding in Ex parte Jackson, supra, in order to prove that the effects of the injury to the scheduled member ‘extend to other parts of the body and interfere with their efficiency,’ the employee does not have to prove that the effects actually cause a permanent physical injury to nonscheduled parts of the body. Rather, the employee must prove that the injury to the scheduled member causes pain or other symptoms that render the nonscheduled parts of the body less efficient.”
“ ‘Boise Cascade Corp. v. Jackson, 997 So.2d 1042, 1044 (Ala.Civ.App.2008). We also note with approval the subsequent explanation by the Court of Civil Appeals in Child Day Care Ass’n v. Christesen, 47 So.3d 249 (Ala.Civ.App.2008):
“ ‘ “In Ex parte Drummond Co., 837 So.2d 831, 834 (Ala.2002), our supreme court restated the test for determining when an injury to a scheduled member may be treated as a nonscheduled injury to the body as a whole: ‘ “[I]f the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.'”, ’ (Quoting 4 Lex K. Larson, Larson’s Workers’ Compensation Law § 87.02 (2001).) ‘To “interfere” means “to interpose in a way that hinders or impedes.” See Merriam-Webster’s Collegiate Dictionary 652 (11th ed.2003). “Efficiency” refers to effective functioning. Id. at 397.’ Boise Cascade Corp. v. Jackson, 997 So.2d 1042, 1045 (Ala.Civ.App.2008).”
“ ‘47 So.3d at 251.’ ”
DuBose Constr. Co. v. Simmons, 144 So.3d 350, 355 (Ala.Civ.App.2013). As this court discussed in DuBose:
“[W]e must determine whether substantial evidence supports the trial court’s determination that [the employee’] knee injury extended to his back and interfered with its efficiency. See [Ex parte] Hayes, 70 So.3d [1211] at 1217 [(Ala.2011) ].
“ ‘Under Alabama’s workers’ compensation law, the determination of whether an injury to one part of the body causes symptoms to another part of the body is a question of medical causation. See Honda Mfg. of Alabama, LLC v. Alford, [6] So.3d [22] (Ala.Civ.App.2007). To prove medical causation, the employee must prove that the effects of the scheduled injury, in fact, contribute to the symptoms in the nonscheduled parts of the body. See generally Ex parte Valdez, 636 So.2d 401, 405 (Ala.1994). Therefore, in order to decide whether the employee has satisfied the first prong of the Drummond test, we must determine whether substantial evidence supports the trial court’s finding that *366 the injury to the employee’s foot altered the employee’s gait so as to cause pain in the employee’s back. See Ala.Code 1975, § 25-5-81(e)(2).’
“Boise Cascade Corp. v. Jackson, 997 So.2d 1042, 1044 (Ala.Civ.App.2008) (footnote omitted).”
Id. at 355. In this case, the record reveals no substantial evidence indicating that the effects of either scheduled injury incurred by Blackmon extended to interfere with the efficiency of other parts of her body. Blackmon testified that her injuries continued to cause her pain and swelling. However, her testimony does not indicate that the effects of the injuries to the scheduled members extend to other parts of her body or interfere with the body’s efficiency. The record does not support, and the trial court’s order fails to specify, a basis on which to depart from the schedule. The evidence is insufficient to support the trial court’s award of permanent-partial-disability benefits outside the compensation schedule for injuries to Blackmon’s wrist and ankle, and, therefore, the trial court’s judgment, insofar as it awarded compensation based on an injury to Blackmon’s body as a whole, is reversed.
ACIPCO also argues that the trial court erred in admitting evidence of Blackmon’s vocational disability through the testimony provided by John Long. Because we have determined that the evidence does not support an award beyond that authorized under the compensation schedule in the Act, we need not address this argument except to note that such testimony is generally irrelevant when compensation is to be limited to an award under the schedule. See Gulf States Paper Corp. v. Warren, 979 So.2d 98, 104 (Ala.Civ.App.2007) (“Because the employee’s recovery was limited to compensation for a scheduled injury, evidence concerning the employee’s vocational disability was irrelevant.”).
ACIPCO argues that the trial court erred by ordering ACIPCO to authorize a physician other than the physician already authorized by ACIPCO to treat Black-mon’s ankle injury. It is undisputed that, following an initial referral to a physician for treatment of her ankle injury, Black-mon expressed dissatisfaction with that treatment and requested a panel of four physicians pursuant to § 25-5-77(a), Ala. Code 1975. Blackmon chose Dr. Meyer for the treatment of her ankle injury. Blackmon does not dispute that she sought treatment at Cooper Green Hospital under the care of Dr. James Floyd on her own and without authorization from ACIPCO because Dr. Meyer had stated that he had no further treatment plans he could offer Blackmon for her ankle injury. ACIPCO never authorized Dr. Floyd as a treating physician. The trial court held:
“Since the Court finds that the ankle injury described herein is compensable under the Worker’s Compensation Act, [Blackmon] should not have to rely on further treatment at Cooper Green Hospital. [Blackmon] has requested that she be allowed to see and be treated by Dr. Shane Buggay for her right ankle injury since she is an established patient with him as the approved physician for her right wrist injury. [Blackmon’s] request for the approval of Dr. Shane Buggay as her approved treating physician for her right ankle injury is due to be granted.”
Blackmon has not identified a statutory basis to support the trial court’s authorization of an additional or further treating physician outside the provisions of § 25-5-77(a), which provides, in pertinent part:
“If the employee is dissatisfied with the initial treating physician selected by the employer and if further treatment is required, the employee may so advise *367 the employer, and the employee shall be entitled to select a second physician from a panel or list of four physicians selected by the employer. If surgery is required and if the employee is dissatisfied with the designated surgeon, he or she may so advise the employer, and the employee shall be entitled to select a second surgeon from a panel or list of four surgeons selected by the employer.”
Dr. Meyer was selected after Blackmon had invoked the panel process provided for in the first sentence of § 25-5-77(a). Dr. Meyer did not believe that surgery was indicated as a treatment option for Black-mon, therefore ACIPCO was not required to provide a panel of four surgeons pursuant to the second sentence § 25-5-77(a). Further, the record does not indicate that Blackmon asked the court to appoint a neutral physician pursuant to § 25-5-77(b), which provides, in pertinent part:
“If a dispute arises as to the injury, or as to the extent of the disability therefrom, the court may, at the instance of either party or of its own motion, appoint a neutral physician of good standing and ability to make an examination of the injured employee and to report his or her findings to the court, the expense of which examination shall be borne equally by the parties.”
This court has held:
“The Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975, gives an employer the right to select an injured employee’s physician in the first instance. See Ala.Code 1975, § 25-5-77(a); see Ex parte Alabama Power Co., 863 So.2d 1099, 1102 (Ala.Civ.App.2008) (stating that the employer has the right ‘to exercise considerable control over the medical care for which it must pay, including the right to choose the employee’s physician in the first instance’). If an injured employee is dissatisfied with the physician selected by the employer, he or she may request that the employer provide a panel of four physicians from which the employee may choose a treating physician. § 25-5-77(a). There is no other method by which the employee may choose another physician provided by the employer.”
Ex parte Imerys USA, 75 So.3d 679, 682 (Ala.Civ.App.2011). Therefore, the trial court’s authorization of Dr. Buggay as a treating physician for Blackmon’s ankle injury was inconsistent with the Act, and we reverse the trial court’s judgment as to this issue.[2]
On cross-appeal, Blackmon argues that the trial court erred by denying her requests to award additional costs of litigation against ACIPCO based on, she alleges, “the confrontational and antagonistic attitude of ACIPCO prior to litigation and throughout.” In support of this allegation, Blackmon cites only § 25-5-89, Ala.Code 1975, which provides:
“Costs may be awarded by said court in its discretion, and, when so awarded, the same costs shall be allowed, taxed and collected as for like services and proceedings in civil cases, but if it shall appear that the employer, prior to the commencement of the action, made to the person or persons entitled thereto a written offer of compensation in specific *368 terms, which terms were in accordance with the provisions of this article and Article 2 of this chapter, then no costs shall be awarded or taxed against such employer.”
(Emphasis added.) However, apart from generally noting that § 25-5-89 “provides for the award of costs,” Blackmon offers no other authority on which this court might review whether the trial court exceeded its discretion in denying her request for additional costs of litigation. It is well settled that “[t]his court will address only those issues properly presented and for which supporting authority has been cited.” Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996). “Rule 28(a)(10) [, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived.” White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008). As a result, we need not consider Blackmon’s cross-appeal further, and we affirm the trial court’s judgment as to this issue.

Conclusion

Because the trial court impermissibly entered an award outside the compensation scheduled in the Act for the injuries Blackmon sustained and impermissibly authorized treatment for Blackmon’s ankle injury by Dr. Buggay without a statutory basis, we reverse the trial court’s judgment as to those issues and remand this case for entry of a judgment consistent with this opinion. The trial court’s judgment, insofar as it denied Blackmon’s motion to tax additional costs against ACIP-CO is affirmed.
APPEAL — REVERSED AND REMANDED.
CROSS-APPEAL — AFFIRMED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
THOMAS, J., concurs in part, concurs specially in part, and concurs in the result in part as to the appeal and concurs in the result as to the cross-appeal, with writing.

. Blackmon is a licensed cosmetologist and attempted to work as a hairdresser after her employment was terminated by ACIPCO.

. We express no opinion as to whether an employee whose authorized treating physicians have not recommended a course of reasonably necessary medical treatment, but whose unauthorized physician has recommended such a course of treatment, may seek judicial vindication of the right to receive the reasonably necessary medical treatment at the cost of the employer on the basis that the employer has neglected or refused to provide the treatment.